NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

FOTOCHROME, INC., Respondent.

No. 379, Docket 29317.

United States Court of Appeals
Second Circuit.

Argued March 11, 1965.

Decided April 8, 1965.

William J. Avrutis, Atty., National Labor Relations Board (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Allison W.

Brown, Jr., NLRB, on the brief), for petitioner.

Burton H. Zuckerman, New York City, for respondent.

Abramson & Lewis, New York City, for the Amicus Curiae.

Irving Abramson, Everett E. Lewis, Leonard Greenwald, New York City, of counsel.

Before SMITH and MARSHALL, Circuit Judges, and DOOLING, District Judge.[*]

SMITH, Circuit Judge:

Respondent, a photo finisher, and its predecessors, with plants at Elmsford, New York and in the Bronx, had for many years bargained with Blueprint, Photostat & Photo Employees Union Local 249, International Jewelry Workers' Union, AFL-CIO. The usual practice was for the employer and the union to bargain on the basis of a contract between the union and an employers' group of which Fotochrome was not a member and for Fotochrome to sign a rider to the group contract. The 1960 contract, the terms of which were somewhat in dispute, expired April 30, 1962. On May 7, Fotochrome inquired about the terms of the new contract with the employer group in order to put the new pay provisions into effect as of May 1, which it substantially did. On May 28, no new contract having been signed by Fotochrome, another union, Local 422, International Production Service and Sales Employees Union, at the invitation of one of Fotochrome's supervisors, a former shop steward of Local 422 at the plant of another employer, sent organizers to the Elmsford plant of Fotochrome, obtained signature cards from a number of the employees and sent organizers to the Bronx plant where they began to sign up employees in the street adjoining the plant. Local 249's shop steward at the Bronx plant, on notifying the union office of Local 422's activity, was told to pull the employees out on strike if necessary to halt the Local 422 activity. He did so and picket lines were established.

Nadaline, respondent's president, learned of the efforts of some other union to come in and of the strike, through the Bronx plant phone operator who overheard an official of Local 249 telling the shop steward to pull the employees out. Nadaline went into the shop and spoke to the shop steward, who told him of the union activity outside. He spoke to two or three supervisors, telling at least one not to join the new union, and asked four or five of the workers not to make any move. Late in the afternoon he called Young, an officer of Local 249, to come up and see if the situation could be straightened out. While Young and Wisotsky, of Local 249, were in Nadaline's office, telegrams were received from Local 422, claiming to represent a majority both at Elmsford and the Bronx. Young asked Nadaline to sign a contract, but Nadaline refused because of the telegrams from Local 422.

On September 17, Local 249 notified both plants of an unconditional offer to return to work on the part of the strikers.

While the trial examiner found that Ricciardi, plant manager at Elmsford, and supervisors Paraggio, Canning, Kurtz and Wilson either urged employees to listen to Local 422's organizers or to sign with Local 422, he held that the activity was not sufficiently brought home to the employer to constitute a violation of § 8(a)(2) and recommended dismissal of those charges. He also found an offer of benefit to one striker, Ortiz, to induce her to return to work, a violation of § 8(a)(1) but recommended against an order based on it, as an isolated instance. He found that Local 249 had a majority on the morning of May 28, but because he had found no unfair labor practice which assisted Local 422, recommended that § 8(a)(5) charges (refusal to bargain) be dismissed. In keeping with his finding of no unfair labor practices, he recommended that the

* Sitting by designation.

§ 8(a)(3) (refusal to reinstate) charges be dismissed.[1]

The Board disagreed with the trial examiner, finding illegal assistance to Local 422 resulting in loss of majority status to Local 249, which made refusal to bargain with Local 249 a violation, found illegal inducement, found that the strike was an unfair labor practice strike and that the striking employees had a right of reinstatement, and entered an appropriate cease and desist, bargaining, reinstatement and back pay order. It seeks enforcement of the order. We find substantial evidence in the record supporting the Board's findings and order, see Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), and grant enforcement.

As is usual when examiner and Board disagree, respondent's contentions are by no means merely colorable. A review of the record and findings before us, however, leads us to agreement with the Board's conclusions as to the employer's responsibility here.

■ Respondent's position essentially is that it is not responsible for the disloyalty of Ricciardi and its supervisors in assisting Local 422, that Nadaline was neutral and did all that could be expected to establish company neutrality in the minds of the employees. But Nadaline's alacrity in breaking off contract talks with Local 249 and his failure to do more than speak to a small number of employees with whom he came in contact, when plainly faced with the active encouragement of Local 422 in the plants, the actions of Ricciardi and the supervisors without strong repudiation by Nadaline, all serve to bolster the Board's conclusion of company implication in Local 249's displacement. H. J. Heinz Co. v. NLRB, 311 U.S. 514, 519–521, 61 S.Ct. 320, 85 L.Ed. 309 (1941).

■ The attempts to influence the employees to join Local 422 constituted unlawful assistance to a labor organization as well as unlawful interference with the employees' rights to choose their own representative. NLRB v. Park Edge Sheridan Meats, Inc., 323 F.2d 956, 959, 2 Cir. 1963.

■ Once illegal assistance is found, followed by dissipation of Local 249's majority, the refusal to bargain with Local 249 was plainly a § 8(a)(5) and (1) violation "[A] condition to any right of the employer to refuse, * * * to bargain with a union which he reasonably thinks has lost its majority, * * * is that the loss of majority was not attributable to unfair labor practices of the employer." NLRB v. Superior Fireproof Door & Sash Co., Inc., 289 F.2d 713, 719, 2 Cir. 1961.

■■ The strike was called in an effort to halt the signing up of the employees by Local 422 with the active and illegal assistance of respondent's supervisors and plant manager. The Board properly held this an unfair labor practice strike, and the respondent was obligated to reinstate the strikers when they unconditionally applied for reinstatement on September 17, 1962. NLRB v. Pecheur Lozenge Co., 209 F.2d 393, 405, 2 Cir. 1953.

■ It is not disputed that Nadaline offered Ortiz, one of the pickets, a job

---

1. The relevant provisions of the National Labor Relations Act as amended (61 Stat. 136, 73 Stat. 519, 29 U.S.C. § 151 et seq.) are as follows:

    \*      \*      \*      \*      \*

    UNFAIR LABOR PRACTICES

"Sec. 8. (a) It shall be an unfair labor practice for an employer—

"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7;

"(2) to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it: * * *

"(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: * * *

  \*      \*      \*      \*      \*

"(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 9(a).

  \*      \*      \*      \*      \* "

which would carry a raise in pay from $65 to $100 a week if she would go in to work as a printer. This was a violation of § 8(a) (1) of the Act, and taken in conjunction with the other violations which the Board properly found, was not so isolated an instance as to require no remedy.

Decree may issue enforcing the Board's order in full.