**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INTERNATIONAL METAL SPECIALTIES, INC., Respondent.**

**No. 20  Docket 34361.**

United States Court of Appeals, Second Circuit.

Argued Sept. 16, 1970.

Decided Nov. 4, 1970.

David Rosenbaum, Washington, D. C., Atty. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Herman M. Levy and Seth D. Rosen, Attys., N.L.R.B.), for petitioner.

Julius Neiman, New York City (Marcus, Shenkman & Neiman, New York City, Jack Levine and Solomon D. Monshine, New York City, of counsel), for respondent.

Before FRIENDLY, SMITH and HAYS, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

The National Labor Relations Board [hereinafter "the Board"] applies for enforcement of a bargaining order issued against respondent International Metal Specialties, Inc., a corporation engaged in fabrication, sale and distribution of metal products in New York City. The order was based on a finding that respondent violated §§ 8(a) (1) and (a) (5) of the National Labor Relations Act (29 U.S.C. § 158) by interfering with employees in the exercise of their rights and by refusing to bargain collectively with the representatives of the employees. These violations, it was held, made impossible the holding of a free election. We hold that the Board's findings are supported by substantial evidence in the record and grant enforcement of the bargaining order.

In May, 1966, Shopmen's Local Union No. 455, International Association of Bridge, Structural and Ornamental Iron Workers, undertook an effort to organize the plant. By June 14, fifteen employees had signed cards designating the union as bargaining agent. An additional employee signed up before June 22. On June 14, the union filed an election petition with the Board and wired the company demanding recognition, a demand repeated June 22. Pursuant to a consent election agreement, a vote was held on August 17, 1966. The union lost by a vote of 16 to 10 with two challenged ballots. The union proceeded to file timely objections to certain conduct of management which allegedly affected the election. In addition, charges of unfair labor practices were brought, and the two cases were consolidated for hearing and decision.

The Board found violations of § 8(a) (1) resulting from threats by supervisors Garguilo and DeRosa of loss of benefits and plant closure if the union should succeed. Also considered a violation of § 8(a) (1) was the statement of one Shields, also found by the Board to be a supervisor, that if the employees had any grievances they should form a committee and see Supervisor DeRosa, thus bypassing the union. The Board further found to be a violation unilateral wage increases intended to undermine the union's position. The Board considered violations of §§ 8(a) (5) and (1) management's refusal to recognize and bargain with the union, which had been designated by a majority of employees in an appropriate bargaining unit. Because of these unfair labor practices, the holding of a free and fair election was found to be impossible.

Our review of the Board findings of fact is confined to a determination of whether they are supported by substantial evidence on the record considered as a whole, taking into account whatever in the record fairly detracts from its weight, but giving due regard to the Board's expertise. Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951). The finding that threats were made by DeRosa and Garguilo is supported by employees' testimony in the record. Some question has arisen, however, concerning Garguilo's status as a spokesman for management, rather than as an employee. The Board's finding that Garguilo was, in fact, a "supervisor" is amply supported by substantial evidence. He is the brother-in-law of the company general manager and the son-in-law of the company secretary. He is paid substantially more than other employees, and the testimony indicated that he assigns, directs and checks employees' work and that he is partially responsible for plant safety.

Shields, too, was properly found to be a management spokesman, because of his comparatively higher pay, as well as his considerable responsibility concerning the assignment and transfer of employees. The question of management or employee status is properly entrusted to the Board's expertise, and we therefore find sufficient support for the Board's decision in this area. See Marine Engineers Beneficial Association v. Interlake Steamship Co., 370 U.S. 173, 179–180, 82 S.Ct. 1237, 8 L.Ed.2d 418 (1962); N.L.R.B. v. Big Ben Department Stores, Inc., 396 F.2d 78, 82 (2d Cir. 1968). The Board similarly had legitimate grounds for finding that the pay increases were granted to thwart the union's drive for support, since the increases came suddenly, after a long period when none had been granted, and following closely upon the company's learning of the union organizational activities.

■ In reviewing the Board's finding that management's refusal to bargain with the union constituted a violation of §§ 8(a) (1) and (a) (5), it is necessary, of course, to determine whether the union actually represented a majority of the plant's workers at the time of its demand for recognition. By June 14, fourteen cards of authorization had been signed by workers. In determining that the union possessed a majority on that date, the Board included the card of employee Stephen Wheatley, although his card had never been received by the union. This card had been signed and given to another employee to turn in, but never reached its intended destination. Because it had in fact been signed and was intended by Wheatley to be transmitted to the union, the authorization of Wheatley was properly included by the Board.

In addition to challenging Wheatley's authorization, management also questions the card of one Joseph Tortello, since it had been turned in on June 18, four days following the union's initial demand for recognition. Since, however, this demand was a continuing one, as evidenced by the renewed demand on June 22, Tortello's

authorization was also properly counted by the Board.

The final questions concerning the majority status of the union concern determination of the total number of workers at the plant. Management argues that the Board improperly excluded Shields and Garguilo, whom the Board found to be supervisors, rather than employees, and one Thomas DeRosa (brother of the plant manager), who was on military leave at the time of the union's recognition demand. If management is correct in arguing that these three individuals should have been considered employees in determining the total number of workers at the plant, that number would have been 32, as opposed to the figure of 29 reached by the Board. We have already indicated, however, that the Board was well within its powers in finding that both Shields and Garguilo were "supervisors" rather than employees. Hence these individuals were properly excluded. Thomas DeRosa was also properly excluded, since his absence in the military service prevented him from being at work or in a pay status. Cf. *Conso Fastener Corp.*, 120 NLRB 532, 542 (1958).

■ The final question raised concerns the propriety of the bargaining order. Appellant's attack on the use of a bargaining order must fail, however, in light of the Supreme Court's decision in N.L.R.B. v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), entrusting to the Board almost total discretion to determine when a bargaining order is appropriate. "In fashioning a remedy in the exercise of its discretion, then, the Board can properly take into consideration the extensiveness of an employer's unfair practices in terms of their past effect on election conditions and the likelihood of their recurrence in the future. If the Board finds that the possibility of erasing the effects of past practices and of ensuring a fair election (or a fair rerun) by the use of traditional remedies, though present, is slight and that employee sentiment once ex-

pressed through cards would, on balance, be better protected by a bargaining order, then such an order should issue." 395 U.S. at 614–615, 89 S.Ct. at 1940. See also 395 U.S. at 612 n. 32, 89 S.Ct. at 1939. Indeed, the violations in this case, marginal though they may appear to some, considerably exceeded the violations in Sinclair Co. v. N.L.R.B., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547, one of the cases decided in the *Gissel* decision, yet the Court in that case affirmed the Board's use of a bargaining order. Enforcement of the Board's order is granted.