ANN LEE SPORTSWEAR, INC., Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,

and

Midwest Regional Joint Board, Amalgamated Clothing Workers of America, AFL–CIO, Intervenor.

No. 75–1719.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted May 18, 1976.

Decided Oct. 29, 1976.

Earl K. Madsen of Bradley, Campbell & Carney, Golden, Colo., for petitioner.

Alan S. Hyde, Washington, D.C. (John H. Ferguson, John S. Irving, Jr., Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Washington, D.C., on the brief), for NLRB, respondent.

Ronald M. Willis, Chicago, Ill., on the brief, for intervenor.

Before McWILLIAMS and BREITEN-STEIN, Circuit Judges, and ZIRPOLI,* District Judge.

McWILLIAMS, Circuit Judge.

Ann Lee Sportswear, Inc., a manufacturer of clothing in Colorado Springs, Colorado, has filed a petition in this Court to review and set aside an order of the National Labor Relations Board. The order in question is reported at 220 NLRB No. 153. The Board in turn has made cross-application for enforcement of its order. The controversy concerns the effort by the Midwest Regional Joint Board, Amalgamated Clothing Workers of America, AFL–CIO, an intervenor in the present proceeding, to represent Ann Lee's employees as their collective bargaining agent. The background facts will not be fully developed in this

* Of the Northern District of California, sitting by designation.

opinion and the reader is referred to the decision and order of the NLRB for such material.

In May 1974 the Union began an organizing campaign among Ann Lee's employees. By June 7, 1974, thirteen of the twenty employees had authorized the Union to represent them in collective bargaining and on that same date the Union, by telegram, demanded recognition as the collective bargaining agent for Ann Lee's employees.

Immediately upon receipt of this telegram on June 7, Duane Miller, the owner of Ann Lee, held two meetings with his employees, and his plant supervisor, one Gregory Keifer, held a third meeting, at which meeting Miller was not present. For the details as to what transpired at those three meetings reference should be made to the decision and order of the Board. It is sufficient here to simply note that as a result of these meetings the employees, or at least a majority of them, had a change of heart and "voted to drop it." When informed of this change of thinking by his employees, Miller commented: " . . . Well, if that's what you want to do, you will have to do it. . . . I don't know what procedure you would have to go through . . . . . I can't do it, you will have to do it if that's what you want."

In formal response to the Union's demand, Miller, on behalf of Ann Lee, rejected its request, and soon thereafter, on June 11, 1974, the Union filed an Election Petition. By agreement an election was held on July 12, 1974, which resulted in five votes for the Union, and twelve against. The Union then made timely objections to the elections, which the Regional Director on October 10, 1974, recommended be overruled. The Union filed exceptions to this recommendation and the Board on review ruled that Objection No. 4 could best be resolved by a hearing. Objection No. 4 was as follows:

> On or about June 11, 1974, and thereafter, employer withheld improvements and benefits, including promotions and transfers, because of the pending election.

The Board ordered that the Objections Case be consolidated for hearing before an Administrative Law Judge with an Unfair Labor Practice Charge, which in the interim, on September 30, 1974, to be exact, had been filed by the Acting Regional Director against Ann Lee on the basis of a charge made to the Acting Director by the Union on July 19, 1974.

These consolidated matters were in due time heard by an Administrative Law Judge. The Judge found violations by Ann Lee of 29 U.S.C. § 158(a)(1) and (3) and, among other things, set aside the election of July 12 and ordered a re-run election. Both Ann Lee and the General Counsel for the Board filed exceptions to the decision of the Judge. On review the Board affirmed the Administrative Law Judge as to her several findings of unfair labor practices on the part of Ann Lee, and then, contrary to the Judge's findings in other respects, the Board found other and additional violations of 29 U.S.C. § 158(a)(1) and (3) by Ann Lee. And, perhaps most importantly, the Board found that the misconduct of Ann Lee had an irremedial effect on free expression to the end that it was unlikely that a fair election could be held within the near future. In line with such finding, the Board concluded that "the desires of the employees once expressed through cards, would, on balance, be better protected by the issuance of a bargaining order" and accordingly ordered Ann Lee, upon request, to bargain with the Union in good faith as of June 7, 1974. It is in this general setting that Ann Lee now seeks review of the Board's order, and the latter, in turn, seeks enforcement.

As concerns the so-called Objection No. 4, referred to above, the Board concluded that Ann Lee had violated 29 U.S.C. § 158(a)(3) by discriminatory acts against both Janet Daugherty and Connie Garcia. The Administrative Judge had found discrimination against Janet Daugherty, but not as to Connie Garcia. Specifically, the Board found that Ann Lee had discriminated against Janet Daugherty by postponing her promotion to a supervisory position in an effort to discourage membership in the Union, in vio-

lation of 29 U.S.C. § 158(a)(3). In the case of Connie Garcia, the Board concluded that Ann Lee had discriminated against her by refusing to grant Connie's request for a transfer, the reason given by the employer for such refusal being that no employee could be promoted or transferred as long as the Union was "in the picture." Additionally, the Board found, as did the Administrative Judge, that Ann Lee on or around June 29, 1974, had forced the resignation of the plant supervisor, Gregory Keifer, who was apparently most unpopular with many of the employees, and that such was done in an effort to influence the employees in their voting in the pending election then set for July 12, in violation of 29 U.S.C. § 158(a)(1).

As concerns the unfair labor practice charge, in addition to the foregoing, the Board also found violations of the Act, occurring in the main at the three meetings held on June 7, 1974, immediately after Ann Lee received the telegram from the Union demanding recognition. Specifically, the Board found that Ann Lee violated 29 U.S.C. § 158(a)(1) by: (1) discussing and promising increased insurance benefits in order to influence the employees' selection of a collective bargaining representative; (2) interrogating employees regarding their union activities and sentiments; (3) polling the employees by asking for a showing of hands whether or not they favored the Union; and (4) threatening employees with economic reprisals if the Union were selected. It was on this general basis that the Board upheld the Union's objections to the election and because of Ann Lee's unfair labor practices ordered Ann Lee to bargain with the Union.

Essentially, there are two issues to be resolved in the present proceeding: (1) whether there is substantial evidence to support the Board's finding that Ann Lee made threats, engaged in coercive interrogation and polling, and promised and granted benefits, in violation of 29 U.S.C. § 158(a)(1), and delayed a promotion and refused a transfer in violation of 29 U.S.C. § 158(a)(3); and (2) whether, in the light of the foregoing unfair labor practices, the Board properly ordered Ann Lee to recognize and bargain with the Union, as opposed to ordering a re-run election. Our study of the record leads us to conclude that the Board's several findings are supported by substantial evidence, and that under the circumstances the Board's order that Ann Lee bargain with the Union was proper and within its discretionary power.

 The findings of the Board with respect to questions of fact are conclusive if supported by "substantial evidence" on the record, considered as a whole. "Substantial evidence" is more than a mere scintilla and connotes such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. *Edison Co. v. NLRB,* 305 U.S. 197 at 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). Whether, in a given case, there is substantial evidence to support the Board's findings is a question which Congress has placed in the keeping of the Courts of Appeal, and such Court should only intervene in what ought to be the rare instance when the standard appears to have been misapprehended or grossly misapplied. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

 The starting point in any analysis of the testimony before the Board is the fact that as of June 7, 1974, a majority of Ann Lee's employees had signed authorization cards indicating that they desired that the Union represent them as their bargaining representative. Such is not here in dispute. When Miller, the owner of Ann Lee, received the telegraphic demand for recognition from the Union on June 7, 1974, it hit like a "bombshell." Miller was apparently totally surprised and had not been in any way forewarned. A series of meetings with the employees followed immediately, at which time Miller conceded that he acted quite emotionally. In the course of ascertaining the reasons for the employees' interest in the Union, Miller discussed and promised improved insurance benefits. Later he forced the resignation of an unpopular plant supervisor. These moves apparently removed two primary sources of em-

ployee discontent. Miller also conducted an open poll of employees concerning their union support at the second of his two meetings with the employees on June 7. Later, on or about June 11, he instituted a freeze on promotions and transfers which he claimed was necessary because of the Union's activity. At one of the meetings held on June 7, Keifer, then the plant supervisor, suggested, either directly or indirectly, depending on who was relating the incident, that if the Union moved in there might be a forced closing of the plant. In sum, those were the findings of the Board, and we conclude that there is substantial evidence to support them. There is evidence to the contrary, of course, but at the same time there is substantial evidence supportive of the Board's findings. Such being the case, the findings under the applicable statute are conclusive. And these facts as thus found constitute clear violations of 29 U.S.C. § 158(a)(1) and (3).

■ Perhaps the crucial issue here to be resolved is the remedial order made by the Board. As indicated, the Board, among other things, ordered Ann Lee to bargain, on request, with the Union as of June 7, 1974. In so doing the Board rejected the order of the Administrative Judge that there be a re-run election. The Board, of course, is not bound by the findings and conclusions of an Administrative Judge, and is free to draw its own inferences, as well as conclusions, when its broader experience and expertise indicates that such is in order. *Rocky Mountain Natural Gas Company v. NLRB,* 326 F.2d 949 (10th Cir. 1964).

Any discussion as to whether the Board acted within its discretion in ordering Ann Lee to bargain with the Union necessarily involves a consideration of *NLRB v. Gissel Packing Company,* 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969). In *Gissel* the Supreme Court, in our view, expanded the area in which the Board could with propriety enter a bargaining order without the necessity of an election or a re-run election. Not only could the Board, as before, order the employer to bargain with the Union in the "exceptional" case marked by "outra-

geous" and "pervasive" unfair labor practices, but under *Gissel* the Board could use such "bargaining order in less extraordinary cases marked by less pervasive practices which nonetheless still have the tendency to undermine majority strength and impede the election process."

■ In *NLRB v. International Metal Specialties, Inc.,* 433 F.2d 870, (2nd Cir. 1970), *cert. denied,* 402 U.S. 907, 91 S.Ct. 1378, 28 L.Ed.2d 647 (1970), the Second Circuit concluded that under *Gissel* the Board is entrusted with "almost total discretion" to determine whether in a given case an order to bargain is the appropriate remedial order. Although we in this Circuit have not used the phrase "total discretion," we have nonetheless indicated quite clearly that in fashioning a remedy the Board is entrusted with considerable discretion in determining whether in a given case the mischief done by the employer's unfair labor practices precludes an election, or a re-run election, and dictates a bargaining order based on employee sentiment as expressed in authorization cards. See, for example, *NLRB v. Okla-Inn,* 488 F.2d 498 (10th Cir. 1973) and *NLRB v. Wylie Manufacturing Company,* 417 F.2d 192 (10th Cir. 1969), *cert. denied,* 397 U.S. 913, 90 S.Ct. 915, 25 L.Ed.2d 94 (1969). In *Wylie* we stated that the Board has authority to issue a bargaining order without requiring the Union to demonstrate that it has been able to maintain majority status and even though it may be clear that the Union has in fact been unable to so do. In such circumstance the significant fact is that prior to the employer's unfair labor practices, the Union did have valid authorization cards from a majority of the employees.

■ We conclude, then, that whether the instant case falls within the second category of cases described in *Gissel* as "less extraordinary" and marked by "less pervasive" practices, is a matter which rests in the sound discretion of the Board. Such being the case, on review, we are not at liberty to substitute our best judgment for that of the Board's, even if our appraisal of the matter differed from that of the Board.

*NLRB v. Okla-Inn,* 488 F.2d 498 (10th Cir. 1973). In evaluating the present case, where the evidence of unfair labor practices might seem a bit thin to some, the fact that this is a small plant is a factor to be given weight. In a bigger plant the effect of an unfair labor practice might be spent because of the sheer numbers involved to the end that a re-run election might be in order. The same conduct in a small, closely knit unit, because of such smallness, might render a fair election unlikely. *NLRB v. Scoler's Incorporated,* 466 F.2d 1289 (2nd Cir. 1972). All in all, the remedial order entered here by the Board was in our view well within its discretionary zone.

█ Minor complaint is made concerning that part of the order directing Ann Lee to bargain as of June 7, 1974. It is said that the order to bargain should start from the date of the Board's decision. Under the circumstances of this case we do not agree. June 7 was the date the Union made its demand and it was on this date that many of Ann Lee's unfair labor practices occurred. The general purpose of any remedial order is to dissipate the effect of the employer's unlawful conduct and restore the status quo.

The order in the instant case to bargain in good faith as of June 7, 1974, is in line with present Board policy as such is enunciated in Trading Port, Inc., 219 NLRB No. 76, Slip Opinion, p. 10. Also, as we understand it, in Sinclair Company, 164 NLRB No. 49 (1967), the order of the Board was that the employer had a bargaining obligation from the date of the Union's demand. The Board's decision in *Sinclair* was affirmed on appeal to the First Circuit, 397 F.2d 157 (1st Cir. 1968), and was thereafter affirmed by the Supreme Court in *Gissel.* We find no error in the instant case as concerns the Board's Order that Ann Lee engage in good faith bargaining as of June 7, 1974. To hold that the decision should only operate prospectively, i. e., from the date of the Board's decision, would permit Ann Lee to benefit, through delay, from its own misconduct.

Ann Lee's petition to set aside the order of the Board is denied, and the Board's petition for enforcement is granted.