**PROXY COMMUNICATIONS OF MANHATTAN, INC.,**
**Petitioner/Cross–Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD,**
**Respondent/Cross–Petitioner,**

**United Telephone Answering and Communications Service Union, Local 780, RWDSU, AFL–CIO, Intervenor.**

**Nos. 805, 892, Dockets 88–4140, 88–4146.**

United States Court of Appeals, Second Circuit.

Argued Feb. 21, 1989.

Decided April 14, 1989.

Yosef J. Riemer, Kirkland & Ellis, Washington, D.C. (John S. Irving, Amy J. Berenson, Washington, D.C., and James K. Leader, New York City, of counsel), for petitioner/cross-respondent.

Robert F. Mace, Atty., N.L.R.B., Washington, D.C. (Collis Suzanne Stocking, Supervisory Atty., Rosemary M. Collyer, Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Aileen A. Armstrong, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., of counsel), for respondent/cross-petitioner.

Jon Quint, Markewich Friedman & Markewich, New York City, for intervenor.

Before OAKES, Chief Judge,
NEWMAN, Circuit Judge, and LEVAL,
District Judge.*

PER CURIAM:

We are asked to enforce an order of the National Labor Relations Board ("NLRB") that arose from an employer's claim that a majority of its employees no longer supports the union. A fuller account of the facts may be found in *Proxy Communications of Manhattan, Inc.*, 290 N.L.R.B. No. 68 (1988).

In approximately 1957, Federated Answering Service ("Federated") voluntarily recognized the United Telephone Answering and Communications Service Union ("the union") as the exclusive collective bargaining representative of its employees. In August 1983, Federated's employees went on strike. The following year, an administrative law judge ("ALJ") found that this was an unfair labor practice strike rather than an economic strike, and that the strikers were therefore entitled to reinstatement. The ALJ also found that Federated was obligated to bargain with the union. *Federated Answering Serv.*, No. 2–CA–19496–1, slip op. at 47 (NLRB Division of Judges July 9, 1984), *aff'd*, 288 N.L.R.B. No. 45 (1988). In June 1985,

* Of the United States District Court for the Southern District of New York, sitting by designation.

Proxy Communications of Manhattan, Inc. ("Proxy") purchased Federated's assets with knowledge of the ALJ's decision. Proxy hired all of the people then working for Federated: thirty-nine striker replacements and seven original employees who either had not joined the strike or had abandoned it. Proxy provided the same services that Federated provided, from the same location and for the same customers.

Three days after Proxy purchased Federated, the union informed Proxy that it had been picketing the company since 1983, that Proxy had a duty to bargain with the union, and that the union was ready to bargain. Proxy replied that it would not bargain because it doubted that the union still had majority support. Proxy also petitioned the NLRB to hold an election. The union then filed an unfair labor practice charge asserting that the election petition was actually an unlawful refusal to bargain. Proxy's election petition was dismissed without prejudice, so that it might be resubmitted after the unfair labor practice charge was resolved. On cross-motions for summary judgment, the NLRB found that Proxy was a successor to Federated, and as such had violated sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (a)(5) (1982) by refusing to bargain; that Proxy was required to remedy Federated's unfair labor practices because it knew of them when it bought the company; and that Proxy's refusal to bargain was not justified by reasonable, good-faith doubt of the union's majority status. Because substantial evidence supports the NLRB's conclusions, *see Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), we enforce the order.

Under *NLRB v. Burns International Security Services, Inc.*, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972), and *Fall River Dyeing and Finishing Corp. v. NLRB*, 482 U.S. 27, 107 S.Ct. 2225, 96 L.Ed.2d 22 (1987), a successor company has an obligation to bargain with the union that represented its predecessor's employees. Proxy must bargain with the union because a majority of the employees that Proxy hired were Federated employees, *see Fall River*, 482 U.S. at 42–43, 107 S.Ct. at 2235–36,[1] and because it runs essentially the same business with essentially the same work assignments, working conditions, services, and customers, *see id.* In addition, the NLRB can require Proxy to remedy Federated's unfair labor practices because Proxy is Federated's successor and knew of those practices when it bought the company. *See Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973).

Furthermore, although Proxy claims that its refusal to bargain with the union is based on reasonable, good-faith doubt that most of the employees support the union, this claim fails for several reasons. First, Proxy cannot presume that the replacement workers have anti-union sentiments. *See NLRB v. Frick Co.*, 423 F.2d 1327, 1334 (3d Cir.1970). An employer cannot use the good-faith doubt defense to reap benefit from its own unfair labor practices, *see NLRB v. Fotochrome, Inc.*, 343 F.2d 631, 633 (2d Cir.), *cert. denied*, 382 U.S. 833, 86 S.Ct. 76, 15 L.Ed.2d 76 (1965), or from the unfair practices of its predecessor, *see Mediterranean Diner, Inc. (Bay Diner)*, 279 N.L.R.B. 538, 538 (1986).

Second, we will not accept Proxy's suggestion that replacement workers should be presumed to oppose the union.[2] Neither will we presume that original employees who abandoned or did not join the strike

---

1. Proxy suggests, citing *Greyhound Taxi Co.*, No. 20–CA–16831, at 3–4 (Oct. 29, 1982) (Memorandum of NLRB Associate General Counsel Division of Advice), that we refuse to count the strikers as Proxy's employees in determining succession. But even if we followed this suggestion, we would still conclude that Proxy and Federated had substantially the same staff because a majority of the people that Proxy hired were Federated employees.

2. This circuit has never been comfortable either with the presumption that replacement workers support the union or with the presumption that they oppose it. *See NLRB v. Windham Community Memorial Hosp.*, 577 F.2d 805, 813 (2d Cir. 1978). Recently the NLRB agreed: It no longer presumes that replacement workers either support or oppose the union. *Buckley Broadcasting Corp. (Station KKHI)*, 284 N.L.R.B. No. 113 (1987).

oppose the union. *NLRB v. Windham Community Memorial Hosp.*, 577 F.2d 805, 813–14 (2d Cir.1978). Proxy's "proof" of opposition consists almost entirely of these unacceptable presumptions. Instead, we require direct, unambiguous evidence of a loss of majority support, and we are especially wary of inferential proof where, as here, that proof has already been rejected by the NLRB. *See NLRB v. Koenig Iron Works, Inc.*, 681 F.2d 130, 137–38 (2d Cir.1982); *see also id.* at 140 (giving examples of acceptable and unacceptable proof of good-faith doubt).

■ Third, the views of strikers who wish to return to work must be considered in determining whether the union still has majority support. *NLRB v. Jarm Enter., Inc.*, 785 F.2d 195, 206 (7th Cir.1986); *Windham*, 577 F.2d at 813; *see also NLRB v. Randle–Eastern Ambulance Serv., Inc.*, 584 F.2d 720, 728–29 (5th Cir.1978). Proxy has no idea how many strikers wish to return to work because it could not obtain a list from the union. Nonetheless, Proxy should have assumed that some of the approximately thirty-nine strikers will ask for reinstatement. Apparently Proxy did not make this assumption, which further undermines its claim of good-faith doubt. In response to this argument, Proxy would say that it has no obligation to count the strikers as employees who support the union because they have not yet offered to return to work. We assume, however, that the strikers have delayed their requests for

reinstatement until Proxy begins to bargain with the union.[3] If the strikers do not request reinstatement after Proxy has shown its intent to bargain in good faith, *then* Proxy could disregard the strikers' views in determining whether the union has majority support. At that point Proxy's employees—including only its current workers and the strikers who have requested reinstatement—might petition the NLRB to decertify the union. *See* 29 U.S.C. § 159(c)(1)(A)(ii), (e)(1) (1982). Thus, if Proxy's claim that the union does not represent the employees proves correct, the employees themselves can soon oust the union.

Order enforced.

---

**3.** Proxy might argue that if the strikers can delay their offer to return to work until bargaining begins, then they have made their offer conditional on bargaining. And a conditional offer, Proxy might say, eliminates its obligation to rehire the strikers, since rehiring unfair labor practice strikers is required only where the offer to return to work is unconditional. *See Koenig Iron Works*, 681 F.2d at 145. We reject this argument because it depends on an unacceptably narrow definition of "unconditional." Offers are usually considered unconditional as long as they do not include demands for specific wages or working conditions. *See, e.g., Richmond Recording Corp. v. NLRB*, 836 F.2d 289, 294 (7th Cir.1987) (union's rejection of piecemeal reinstatement plan did not make offer to return conditional because it reasonably demanded union's legal rights); *Serv–Air Inc. v. NLRB*, 395 F.2d 557, 561–62 (10th Cir.) (union's

demand that employer cease unfair practices did not make offer to return conditional because union did not request any specific major concession), *cert. denied*, 393 U.S. 840, 89 S.Ct. 121, 21 L.Ed.2d 112 (1968); *Consolidated Dress Carriers, Inc.*, 259 N.L.R.B. 627, 636 (1981) (examples of conditional offers include demands for wages, benefits, or other improvements in working conditions), *enforced*, 693 F.2d 277 (2d Cir.1982); *but see Local No. 380, Int'l Union, Allied Indus. Workers of Am. v. NLRB*, 411 F.2d 249, 250–51 (7th Cir.1969) (union's demand that employer agree to bargain did make offer to return conditional), *cert. denied*, 396 U.S. 1003, 90 S.Ct. 553, 24 L.Ed.2d 495 (1970). We think that an offer to return to work contingent on the start of bargaining can still be considered unconditional, and that Proxy therefore cannot avoid its obligation to accept such an offer.