**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**Local 282 International Brotherhood of Teamsters, Intervenor,**

v.

**GLOVER BOTTLED GAS CORP., Synergy Gas Corp., Vogel's Inc., Propane Corp., Synergy Group, Inc., Respondent.**

**No. 1312, Docket 90–4022.**

United States Court of Appeals, Second Circuit.

Argued May 7, 1990.

Decided June 13, 1990.

---

William M. Bernstein, N.L.R.B. (Jerry M. Hunter, General Counsel, Robert E. Allen, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, N.L.R.B., Washington, D.C., of counsel), for petitioner.

Arthur R. Kaufman (Peter A. Schneider, Kaufman, Frank, Naness, Schneider & Rosensweig, Melville, N.Y., of counsel), for respondent.

Before ALTIMARI and MAHONEY, Circuit Judges, and POLLACK *, Senior District Judge.

ALTIMARI, Circuit Judge:

On this appeal we consider whether an employer gave sufficient notice of its withdrawal of recognition from a union so as to commence the limitation period pursuant to Section 10(b) of the National Labor Relations Act, as amended, 29 U.S.C. § 160(b) (1982 ed.) ("the Act"). The National Labor Relations Board ("N.L.R.B." and "the Board") petitions for enforcement of its February 8, 1989 order against Glover Bottled Gas Corp. ("Glover"), Vogel's Inc., New York Propane Corp., Synergy Gas Corp. and Synergy Group, Inc. (collectively "the Company"). The Company cross-petitions for a review of the Board's order. Local 282, International Brotherhood of Teamsters ("the Union"), as intervenor, joins in and adopts in its entirety the Board's position on this petition. We have jurisdiction pursuant to Section 10(e) of the Act.

---

* The Honorable Milton Pollack of the United States District Court for the Southern District of New York, sitting by designation.

For the reasons discussed below, the Board's application for enforcement of the order is granted; the Company's cross-petition to vacate the order is denied.

## BACKGROUND

The Company, which is comprised of several corporations including Glover, acts as a single employer engaged in the sale and distribution of propane gas and related products. Glover and the Union were parties to a collective bargaining agreement covering all drivers, platform workers, and servicemen which expired on July 31, 1982. Between August 1, 1982 and February 2, 1983, Glover and the Union participated in several unsuccessful collective bargaining sessions aimed at reaching a new agreement. On February 3, 1983, the Union commenced a strike against Glover. During the course of the strike, Glover hired eleven permanent replacements for the fifteen strikers. Approximately ten weeks after commencing the strike, the Union notified Glover of the fifteen strikers' unconditional offer to return to work.

In 1983 and 1984, the Union filed charges with the Board alleging several unfair labor practices in violation of the Act. Specifically, the Union alleged that, although Glover reinstated three of the striking employees, Glover failed to pay vacation money for 1983 to all three reinstated employees, assigned two of the three employees to low-skilled jobs normally performed by new employees, and refused bereavement pay to one of the three employees, in violation of Sections 8(a)(1), 8(a)(3) and 8(a)(5) of the Act. The Union further alleged that, although there were numerous openings and sufficient work, Glover declined to reinstate any of the remaining twelve strikers, and filled the openings by hiring new employees or transferring employees into Glover from other divisions of the Company, in violation of Sections 8(a)(3) and 8(a)(1) of the Act. The Union also alleged that in June of 1984, Glover unilaterally instituted an unlawful mandatory polygraph examination policy, and that shortly thereafter Glover discharged an employee who was scheduled to testify at a Board hearing and who had expressed his intention not to submit to the polygraph examination, in violation of Sections 8(a)(1), 8(a)(4) and 8(a)(5). The various allegations were eventually consolidated, and in May and June of 1986, hearings were conducted in connection with them before Administrative Law Judge McLeod ("the A.L.J.").

From 1983 through 1986, the Union continued to represent the employees at arbitration proceedings. Either in October 1985 or January 1986, the attorneys for Glover and the Union discussed a possible settlement to one of these arbitration proceedings. During this discussion, Glover's legal counsel informed an attorney for the Union of his doubt that the Union could be presumed to represent the employees. On April 9, July 1, and August 8, 1986, the Union sent written requests to meet and bargain with Glover. Glover failed to respond to these requests, and on September 26, 1986, the Union filed a charge alleging a violation of Sections 8(a)(5) and 8(a)(1) of the Act. At a subsequent hearing before the A.L.J. in connection with this charge, Glover's legal counsel testified about his January conversation with the Union attorney:

> [I]t was in response to his saying that we had this continuing obligation to negotiate on these subjects and I told him that we didn't recognize having an obligation, that we didn't think that they not only didn't [sic] represent the majority, but that they didn't [sic] represent anybody and that's the phrase I used.

The record is bereft of any indication that the Glover attorney commemorated a notice of withdrawal of recognition of the Union at the time of his discussion with the Union attorney.

In a lengthy and thorough opinion, dated August 26, 1987, the A.L.J. found in favor of the Union, and thereafter, the A.L.J.'s decision was affirmed by a panel of the N.L.R.B. The Board found that the Company: (1) treated returning strikers as new employees and withheld vacation and bereavement pay from returning strikers, in violation of Sections 8(a)(1), 8(a)(3) and 8(a)(5) of the Act; (2) discharged an em-

ployee in retaliation for his agreement to give testimony before the Board under the guise that he refused to submit to polygraph policy which policy was determined to be unlawful, in violation of Sections 8(a)(1), 8(a)(4) and 8(a)(5) of the Act; (3) failed to offer available positions to striking employees who made an unconditional offer to return to work, in violation of Sections 8(a)(3) and 8(a)(1) of the Act; and (4) refused to bargain with, or provide information, to the Union, in violation of Sections 8(a)(5) and 8(a)(1) of the Act. On this appeal, the Company does not contest that it engaged in the unfair labor practices specified in the Board's first two findings.

## DISCUSSION

At the outset, we note that Congress has entrusted the Board with primary responsibility for developing and applying national labor policy, and consequently, a Board rule is entitled to considerable deference so long as it is rational and consistent with the Act. *See N.L.R.B. v. Curtin Matheson Scientific, Inc.,* — U.S. ——, 110 S.Ct. 1542, 1549, 108 L.Ed.2d 801 (1990); *N.L.R.B. v. Cooper Union for Advancement of Science and Art,* 783 F.2d 29, 31 (2nd Cir.), *cert. denied,* 479 U.S. 815, 107 S.Ct. 70, 93 L.Ed.2d 27 (1986). Moreover, the Act "vests primary responsibility in the [N.L.R.B.] ... to resolve ... difficult questions of fact." *N.L.R.B. v. American Geri-Care, Inc.,* 697 F.2d 56, 59 (2nd Cir.1982), *cert. denied,* 461 U.S. 906, 103 S.Ct. 1876, 76 L.Ed.2d 807 (1983). On appellate review, the Board's findings will not be overturned if they are supported by "substantial evidence." *See N.L.R.B. v. Erie Resistor Corp.,* 373 U.S. 221, 236, 83 S.Ct. 1139, 1149, 10 L.Ed.2d 308 (1963); *N.L.R.B. v. S.E. Nichols, Inc.,* 862 F.2d 952, 956 (2nd Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 3162, 104 L.Ed.2d 1025 (1989). Recently, we elucidated the substantial evidence rule by stating: "even if we disagree with the Board's findings, reversal based upon ... [a] factual question will only be warranted if, after looking at the record as a whole, we are left with the impression that no rational trier of fact could reach the conclusion drawn by the Board." *N.L.R.B.*

*v. Springfield Hospital,* 899 F.2d 1305, 1310 (2nd Cir.1990). Accordingly, our "scope of review on petition for enforcement of an NLRB order is properly quite limited." *American Geri-Care,* 697 F.2d at 59.

■ The Company first argues that the Board erred when it found that the Company violated Sections 8(a)(5) and 8(a)(1) of the Act by refusing to bargain with, or provide information to, the Union. Specifically, the Company contends that it officially withdrew recognition from the Union during a January 1986 meeting between their attorneys, and that pursuant to the six month period provided for in Section 10(b) of the Act, the September 26, 1986 charge was not timely filed. We disagree.

Section 10(b) of the Act provides that "no complaint shall issue upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board ..." *See* 29 U.S.C. § 160(b). Several of the Courts of Appeals have adopted the rule that "[t]he 10(b) period begins when the victim of an unfair labor practice receives *unequivocal notice* of a final adverse decision." *Esmark, Inc. v. N.L.R.B.,* 887 F.2d 739, 746 (7th Cir.1989); *accord Teamsters Local Union No. 42 v. N.L.R.B.,* 825 F.2d 608, 616 (1st Cir.1987) ("As ... no unequivocal notice ... was communicated.... the unfair labor practice was timely filed ..."); *N.L.R.B. v. Allied Products Corp., Richard Bros. Div.,* 548 F.2d 644, 650 (6th Cir.1977) ("[T]he six month limitation period does not begin to run until the employer's unlawful activity ... has become known to the charging party."). The unequivocal notice rule rests on the fundamental procedural objective of promoting prompt filing of ripe charges while not precipitating premature filing. Particularly in the area of labor relations disputes where rumors and suspicions can abound, the 10(b) limitations period ought not to commence until an aggrieved party has actual knowledge "of the facts necessary to support a present, ripe, unfair labor practice charge." *Esmark,* 887 F.2d at 746. It follows that for the purposes of Section 10(b), a charging party must re-

ceive unequivocal notice of an employer's withdrawal of recognition of a union's majority status.

In the instant case, we think that " 'substantial evidence on the record considered as a whole,' " *American Geri–Care*, 697 F.2d at 59 (quoting *N.L.R.B. v. International Metal Specialties, Inc.*, 433 F.2d 870, 871 (2nd Cir.1970), *cert. denied*, 402 U.S. 907, 91 S.Ct. 1378, 28 L.Ed.2d 647 (1971)), supports the Board's determination that the Union had not received unequivocal notice from the Company. The Board based its determination on the ground that statements made by Glover's legal counsel in association with the January 1986 arbitration amounted to an expression of opinion and not to an actual notice of withdrawal of recognition. As the A.L.J. observed, Glover's legal counsel, an experienced labor attorney, would be unlikely to communicate a withdrawal of recognition except in a clear and exact manner. This observation is bolstered by the fact that no record was made at the time of the informal discussion between the attorneys and that we must now rely on the legal counsel's recollection of the conversation as recalled in the testimony before the A.L.J. Further, the A.L.J. noted that the purpose of the January 1986 meeting was to discuss a possible settlement to a specific arbitration proceeding and not to bargain over Glover's changes in employee benefits and working conditions. Moreover, the January conversation between attorneys for Glover and the Union occurred in the absence of any pending request from the Union to Glover to bargain. As our scope of review is "quite limited", *American Geri–Care*, 697 F.2d at 59, and findings of the Board " 'cannot lightly be overturned' ", *id.* at 60 (quoting *N.L.R.B. v. Advanced Business Forms Corp.*, 474 F.2d 457, 464 (2nd Cir.1973) (citations omitted)), we see no reason to repudiate the Board's finding that the statement by Glover's legal counsel did not amount to an unequivocal notice of withdrawal. Accordingly, the Company's assertion of the affirmative defense based on the statute of limitations in Section 10(b) of the Act must fail.

■ In the alternative, the Company argues that the Board was required to dismiss the charge that the Company failed to bargain with, or provide information to, the Union pursuant to *Jefferson Chemical Co., Inc.*, 200 N.L.R.B. 992 (1972). In that case the Board held that where a broad "refusal to bargain collectively charge" had previously been litigated, the General Counsel was precluded from subsequently litigating a "surface bargaining charge" which arose out of facts that could have been discovered in connection with the previous litigation. *Id.* According to the Company, the holding in *Jefferson Chemical* prohibited the Board from considering the Union's withdrawal of recognition charge since the facts supporting the charge transpired before the May and June 1986 hearings on the other alleged unfair labor practices. To the contrary, the Board affirmed the A.L.J.'s rejection of the Company's position since at the time of the earlier hearings it simply was not yet clear that Glover had actually withdrawn recognition from the Union. Additionally, "[a]lthough the Board's decisions are by no means immune from attack", we must defer to the Board where "its explication is not inadequate, irrational or arbitrary." *Erie Resistor*, 373 U.S. at 236, 83 S.Ct. at 1149. The Board is best suited to interpret its own precedent and to apply it to the facts of a particular case, *see N.L.R.B. v. J. Weingarten, Inc.*, 420 U.S. 251, 265–66, 95 S.Ct. 959, 967–68, 43 L.Ed.2d 171 (1975), and its interpretation here, in light of the finding that Glover failed to provide unequivocal notice of withdrawal, cannot be said to be inadequate, irrational or arbitrary.

■ The Company next argues that the Board erred by failing to find that the Union had lost majority status based on the anti-union sentiments of the employees, and that the Company was under no obligation to bargain with the allegedly defunct Union. An employer seeking to terminate a collective bargaining relationship by withdrawing recognition from a Union must rebut a presumption of continued majority status " '1) by showing that on the date recognition was withdrawn, the union did not in fact enjoy majority support, or 2)

by presenting sufficient evidence to show that the refusal to bargain was based on a serious good faith doubt of the union's majority.'" *N.L.R.B. v. Windham Community Memorial Hospital*, 577 F.2d 805, 811 (2nd Cir.1978) (quoting *Retired Persons Pharmacy v. N.L.R.B.*, 519 F.2d 486, 489 (2nd Cir.1975)); *see also Curtin Matheson*, 110 S.Ct. at 1549–50. The "determination of the sufficiency of the employer's evidence regarding loss of majority status or good faith doubt is a question of fact for the Board which is subject to limited review." *N.L.R.B. v. Koenig Iron Works, Inc.*, 681 F.2d 130, 137 (2nd Cir.1982) (citing *Windham*, 577 F.2d 805, 811, and *Orion Corp. v. N.L.R.B.*, 515 F.2d 81, 85–86 (7th Cir.1975)).

Although the Union made no formal requests for bargaining between 1983 and 1986, the Board found that during this time period the Union had been actively involved in representing employees before the Board in unfair labor practice proceedings, before arbitrators, and before this Court on several occasions. Further, the Supreme Court recently upheld the Board's rule articulated in *Station KKHI*, 284 N.L.R.B. 1339 (1987), *enforced sub nom. N.L.R.B. v. Buckley Broadcasting Corp. of Cal.*, 891 F.2d 230 (9th Cir.1989), which refuses to adopt a general presumption about the sentiments of striker replacements as a basis for determining the loss of a union's majority status. *Curtin Matheson*, 110 S.Ct. at 1554. Thus, the Company has not met its burden to show that on the date it claims to have withdrawn recognition, the union did not actually enjoy majority status. In addition, "[a]n employer cannot use the good-faith doubt defense to reap benefit from its own unfair labor practices." *Proxy Communications of Manhattan, Inc. v. N.L.R.B.*, 873 F.2d 552, 554 (2nd Cir.1989) (citing *N.L.R.B. v. Fotochrome, Inc.*, 343 F.2d 631, 633 (2nd Cir.), *cert. denied*, 382 U.S. 833, 86 S.Ct. 76, 15 L.Ed.2d 76 (1965)). In the instant case, it is uncontroverted that the Company engaged in various unfair labor practices. Accordingly, we agree with the Board that the Company has failed to rebut the presumption of the Union's majority status.

Finally, the Company also contests the Board's determination that the Company violated Sections 8(a)(3) and 8(a)(1) of the Act by failing to offer available positions to striking employees who, through the Union, made an unconditional offer to return to work. An employer who denies or delays reinstatement following employees' unconditional offers to return to work violates the Act absent a showing of "a substantial and legitimate business reason for refusing reinstatement." *Koenig Iron Works*, 681 F.2d at 145; (citing *N.L.R.B. v. Great Dane Trailers, Inc.*, 388 U.S. 26, 87 S.Ct. 1792, 18 L.Ed.2d 1027 (1967), and *N.L.R.B. v. Fleetwood Trailer Co.*, 389 U.S. 375, 377–79, 88 S.Ct. 543, 545–46, 19 L.Ed.2d 614 (1967)). Here, the Company does not offer any business reason for its failure to reinstate, but only asserts that a questionnaire it mailed to strikers constitutes a valid offer of reinstatement. To the contrary, the Board found that the questionnaire did not include an offer of reinstatement, but simply sought information regarding availability. Applying the substantial evidence rule, we perceive no reason why the Board's finding should be set aside. *See Erie Resistor*, 373 U.S. at 236, 83 S.Ct. at 1149; *S.E. Nichols*, 862 F.2d at 956.

## CONCLUSION

We have examined the Company's remaining contentions and find them to be without merit. For all the foregoing reasons, the N.L.R.B.'s petition for enforcement of its order is granted. The Company's cross-petition is denied.