NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

WHITNEY MUSEUM OF AMERICAN
ART, Respondent.

Nos. 51, 81, Dockets 80–4051, 80–4065.

United States Court of Appeals,
Second Circuit.

Argued Sept. 4, 1980.
Decided Nov. 13, 1980.

Alfred W. Vadnais, Chattanooga, Tenn. (William G. Trumpeter, Humphreys, Hutcheson & Moseley, Chattanooga, Tenn., of counsel), for respondent.

Richard. B. Bader, Atty., N.L.R.B., Washington, D. C. (William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Barbara J. Kraft, Atty., N.L.R.B., Washington, D. C., of counsel), for petitioner.

Before MANSFIELD and MULLIGAN, Circuit Judges, and NICKERSON, District Judge.*

MANSFIELD, Circuit Judge:

The National Labor Relations Board (the Board) seeks enforcement of its order requiring the Whitney Museum of American Art (the employer) to bargain with Local 259, United Automobile, Aerospace and Agricultural Implement Workers of America (the Union). The order issued on January 24, 1980, after a finding by the Board that the Museum violated §§ 8(a)(1) & (5) of the National Labor Relations Act, 29 U.S.C. §§ 151, et seq. (the Act), by refusing to bargain with the Union, which had been certified as the exclusive bargaining representative of a unit of the employer's employees. The refusal to bargain is admitted by the employer and was resorted to by it as a means of contesting the validity of the Board's certification. Thus, the propriety of that certification is the only issue before

us. We hold that the certification was proper and that the Board's order should be enforced.

On March 15, 1979, a consent election among Whitney employees was won by the Union by a 12 to 9 vote. The employer filed objections, claiming that improper Union conduct had affected the results, and requested the Regional Director to conduct an administrative investigation, which followed. The Regional Director's report recommended that the employer's objections be overruled and that the Union be certified. The employer then filed exceptions with the Board, but the Board adopted the Regional Director's findings and recommendations. On July 25, 1979, it certified the Union as the representative of the employees in the unit agreed on by the parties. A motion for reconsideration was denied. The Museum refused to bargain and the unfair labor practice proceedings ensued.

On this application the employer renews its basic objections to the underlying representational proceedings. First, it claims that the Union's promises during the campaign to waive its $20 initiation fee and its $30 service and organizing charge and to charge dues based on the average wages in the employees' own unit as opposed to the local as a whole were impermissible offers of benefits. Second, it asserts that those same promises were material misrepresentations by the Union of its by–laws and constitution. These two objections, claimed to require voiding of the election, were considered and rejected by the Board and the Regional Director. Third, the employer argues that it was entitled to an evidentiary hearing on its objections, not just an administrative investigation, and that at the least we should remand for such a hearing. The Board, in granting certification, determined that such a hearing was not required. We believe that the Board was within its discretion in rejecting all three of the employer's objections and that neither a new election nor an evidentiary hearing is called for.

---

* Of the United States District Court for the Eastern District of New York, sitting by designation.

The only substantial issue in this case is the employer's contention that the Union's promises (and, presumably, its grant) of a waiver of its initiation and organizing charges and of an allegedly lower–than–usual dues structure, constituted improper voting pressure and necessitated setting aside the election. On this point both sides rely on *NLRB v. Savair Mfg.*, 414 U.S. 270, 94 S.Ct. 495, 38 L.Ed.2d 495 (1973), and its progeny. In *Savair*, the Court, reversing the Board, held that a union's offer to waive a $10 initiation fee for those employees who joined the union prior to the election was likely to have interfered with employee free choice and required the election to be set aside. Footnote four of the opinion stressed that the union's offer was conditional, being limited to those employees signing up before the election.[1] We have since held that an unconditional promise to waive an initiation fee, which is open to all employees regardless of how they vote and which remains open after the date of certification, is permissible. *NLRB v. Dunkirk Motor Inn, Inc.*, 524 F.2d 663, 665 (2d Cir. 1975); see in accord, *Warner Press v. NLRB*, 525 F.2d 190, 196–97 (7th Cir. 1975), *cert. denied*, 424 U.S. 943, 96 S.Ct. 1410, 47 L.Ed.2d 348 (1976), and the cases cited therein.

The offers in this case were clearly unconditional. The notice distributed by the Union expressly extended the fee waivers to all individuals who were then unit employees, without qualification. It stated that only employees hired after a collective bargaining contract had actually been signed would be subject to the charges. Presumably no employees at all would be subject to a higher dues scale. The employer offered no evidence to indicate that the Union ever attached conditions to the promises contained in the notice.

The employer argues that, whether conditional or not, the *total* benefits promised by the Union constituted an offer of substantial economic incentives which is not implicitly endorsed by footnote four in *Savair* but is, on the contrary, condemned by that case. The employer contends that, even if the service and organizing charge is analogous to an initiation fee, as the Regional Director held, the Union's waiver of both types of fees (here totalling $50) and, in addition, its lowering of the usual dues scale no longer amounted merely to removal of an "artificial obstacle" to union support within the scope of footnote four, but constituted the improper purchase of employee support by the grant of significant economic incentives. The argument in a nutshell is that "if the Union had simply given each employee $50 or more prior to the election, the Board would condemn it" (Museum Brief at 25), and that the Union's conduct here was tantamount to just that.

At first blush this contention has surface appeal. In *NLRB v. Exchange Parts Co.*, 375 U.S. 405, 84 S.Ct. 457, 11 L.Ed.2d 435 (1964), the Court forbade the promise or grant of pre–election benefits by an *employer*. *Savair*, in one sense, evened the score by holding that the conditional grant or promise of fringe benefits by unions amounted to bribery which could also invalidate an election. The recognition in footnote four of a union's legitimate interest in unconditionally removing artificial economic obstacles to employee endorsement of the union was not an approval of all across–

---

1. The *Savair* footnote reads as follows:

"The Board argues that unions have a valid interest in waiving the initiation fee when the union has not yet been chosen as a bargaining representative, because ' "[e]mployees otherwise sympathetic to the union might well have been reluctant to pay out money before the union had done anything for them. Waiver of the [initiation fees] would remove this artificial obstacle to their endorsement of the union." ' See *Amalgamated Clothing Workers v. NLRB*, 345 F.2d 264, 268 (CA2 1969). While this union interest is legiti-

mate, the Board's argument ignores the fact that this interest can be preserved as well by waiver of initiation fees available not only to those who have signed up with the union before an election but also to those who join after the election. The limitation imposed by the Union in this case–to those joining before the election–is necessary only because it serves the additional purpose of affecting the Union organizational campaign and the election." 414 U.S. at 274 n.4, 94 S.Ct. at 496–497 n.4.

the-board grants of economic benefits. If it were, a union could freely "buy" votes with unconditional promises or conferrals of monetary benefits. Such action is condemned by the language and the policy of *Savair*, see 414 U.S. at 277, 279 n.6, 94 S.Ct. at 500 n.6, as well as by a variety of Board and court decisions, see, e. g., *Easco Tools, Inc.*, 245 N.L.R.B. No. 105 (1980) (payment by union of $40 to its observers); *NLRB v. Madisonville Concrete Co.*, 552 F.2d 168 (6th Cir. 1977) (union payment of an employee's traffic ticket); *General Cable Corp.*, 170 N.L.R.B. 1682 (1968) ($5 gift certificate given to eligible voters); *Collins & Aikman Corp. v. NLRB*, 383 F.2d 722 (4th Cir. 1967) (excessive payment to union observer); *Teletype Corp.*, 122 N.L.R.B. 1594 (1959) (bidding by competing unions to encourage employees to attend meetings).

An outright gift or promise of benefits by an employer to his employees pending election carries with it a strong likelihood of undermining the employees' freedom of choice. Its coercive effect is increased by the employees' economic dependency upon the employer as the source of their future livelihood. As the Court pointed out in *Exchange Parts, supra*, 375 U.S. at 409, 84 S.Ct. at 459–460.

> "The danger inherent in well–timed increases in benefits is the suggestion of a fist inside the velvet glove. Employees are not likely to miss the inference that the source of benefits now conferred is also the source from which future benefits must flow and which may dry up if it is not obliged. The danger may be diminished if, as in this case, the benefits are conferred permanently and unconditionally. But the absence of conditions or threats pertaining to the particular benefits conferred would be of controlling significance only if it could be presumed that no question of additional benefits or renegotiation of existing benefits would arise in the future; and, of course, no such presumption is tenable."

To a somewhat lesser extent, although still in the same category, outright gifts by a union to prospective members, unconnected with the terms and conditions of union membership, have no purpose other than to pervert the employee's free choice. See *Easco Tools Inc., supra*, and *NLRB v. Madisonville Concrete Co., supra*.

A change in terms and conditions of union membership, on the other hand, although it may influence an employee toward joining the union, is nothing more than the removal by the union of a self–imposed barrier, which makes membership itself more attractive. It has at most a limited potential for influencing the employee's choice, since the amounts involved are small compared with wages or other terms of employment and the employee is *not* dependent on the union or its largess as the source from which all future benefits flow. Moreover, should the union go back on its promises, something that has not occurred here, it would face charges of misrepresentation which could result in setting aside the election. For these reasons a union should not be required, even pending an election, to freeze the terms and conditions of membership as long as any relaxation is not used selectively to favor only those employees who join the union. In short, the effect of an unconditional change in the terms and conditions of union membership cannot be equated with the coercive effect of a change or promise of change in the terms and conditions of employment. Since the Union's lowering of self–imposed barriers in the present case is permissible under *Savair* and its progeny, we need not determine whether, as the employer contends, the dues scale offered was lower than the usual scale.

The employer's other objections are without merit. The Board was well within its discretion in concluding that the Union's promises were not such material misrepresentations of its constitution and by–laws as required a new election under the now resurrected *Hollywood Ceramics, Inc.*, 140 N.L.R.B. 221 (1962), standard. There is no evidence that the Union's representations about its rules, if indeed such representations existed, were false. As the Seventh Circuit said in disposing of an almost identical claim:

> "Furthermore, the Company does not contend that the Union failed to fulfill its

promise to waive the fees. The Union's statements, therefore, have not been demonstrated to be untrue or misleading. The Union promised to waive the fees and it apparently has fulfilled that promise." *Warner Press v. NLRB, supra,* 525 F.2d at 193.

Moreover, even if false representations were made, the employer had the opportunity to respond and did in fact respond. Not only did the employer offer its interpretation of the Union rules, but it made available to the employees the actual disputed documents. Such opportunity is dispositive of the employer's claim. *Lipman Motors v. NLRB,* 451 F.2d 823, 825–26 (2d Cir. 1971).

 Likewise, the Board did not abuse its discretion in declining to grant a hearing or in approving the Regional Director's use of an administrative investigation. The parties are agreed that the "right" to a hearing arises only when a party shows by *prima facie* evidence the existence of substantial and material factual disputes which, if resolved in its favor, would require the setting aside of the election. See, *Lipman Motors, supra,* 451 F.2d at 827. The employer did not meet this standard. It claims that the Union's version of certain facts is not correct, but nowhere does it offer any specific evidence which might contradict the Union's claims. "Bald assertions" that a factual dispute exists are not sufficient. They must be supported by "specific factual allegations," 451 F.2d at 827. More importantly, however, the factual disputes alleged by the employer are not material because even if they were resolved in its favor, a new election would not be called for. The promise and grant of the fee waivers and a lower dues structure are permissible. If any misrepresentations were made, the employer had opportunity to respond.

Enforcement of the order is granted.