**NATIONAL LABOR RELATIONS
BOARD, Petitioner,**

v.

**SEMCO PRINTING CENTER,
INC., Respondent.**

**No. 21, Docket 83–4034.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 12, 1983.

Decided Nov. 17, 1983.

Phillip J. Moss, Boston, Mass. (Morgan, Brown & Joy, Boston, Mass., of counsel), for respondent.

Lawrence E. Blatnik, Atty., N.L.R.B., Washington, D.C. (William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., of counsel), for petitioner.

Before FEINBERG, Chief Judge, and LUMBARD and NEWMAN, Circuit Judges.

LUMBARD, Circuit Judge:

The National Labor Relations Board (NLRB) petitions this court for enforcement of its order, 265 NLRB No. 73 (1982), requiring Semco Printing Center, Inc., to bargain with Graphic Arts International Union, Local 10–B, AFL–CIO, the newly certified union representatives for its Albany printing facility. Semco acknowledges its refusal to bargain with the Union, but seeks to have the Board's petition denied on the ground that the Union was improperly certified by the NLRB in the underlying representation proceeding over objections by Semco to election irregularities. We hold that the NLRB properly overruled Semco's objections, and therefore grant enforcement of its order.

I.

On May 8, 1981, the NLRB conducted an election in an agreed-upon unit of Semco's employees, which included thirteen fulltime and regular part-time production and maintenance employees at Semco's Albany facility. The Union won the election by a vote of 8 to 5 with no challenged ballots.

On May 14, 1981, Semco timely filed thirteen objections to the election, together with supporting affidavits. The objections alleged the Union (1) promised certain, but not all, employees that it would waive their initiation fees; (2) promised to waive initiation fees for employees who joined prior to the election; (3) represented to employees that signing an authorization card was only to get an opportunity to vote; (4) represented to employees that signing an authorization card was protection against discharge by the Employer; (5) represented to employees that, if an employee did not sign an authorization card, the Union could not stand by him if discharged; (6) represented to employees that if the Union won the election it would discriminate against employees who had not shown support for it prior to the election, by not representing them as vigorously as it would represent employees who had shown support; (7) misrepresented wages and benefits it claimed to have negotiated at other shops; (8) represented to employees that another employer, in order to recoup its campaign costs, had reduced wages of its employees after the Union had lost the election; (9) suggested to employees that Semco would lower its wages to recoup campaign costs if the Union lost the election and that the employees would be unprotected against such action; (10) misrepresented to employees that Semco's parent company was already unionized at other locations; (11) misrepresented to employees that the Employer was already negotiating union contracts at other branches; (12) coerced employees by trespassing on the Employer's premises and taking pictures of employees while soliciting authorization cards from them; and (13) promised employees that it would waive provisions in its constitution and bylaws which restricted the ratio of apprentices to journeymen in the shop.

Pursuant to § 102.69 of the Board's Rules and Regulations, the Regional Director of the Board conducted an investigation of Semco's objections, including a review of sworn statements of witnesses, documentary evidence submitted by the parties, and parties' sworn statements. On June 16, 1981, the Director issued his report recommending that the Board overrule all thirteen objections as too insubstantial to warrant setting aside the election, and issue a

certification of representation. The Board, after considering the exceptions to the report and supporting affidavits filed by Semco, adopted the Director's recommendation to overrule objections 3–13, but ordered a full evidentiary hearing on objections 1 and 2 to resolve factual disputes concerning the precise language of statements made by Union officials about the initiation fee waiver. After the hearing on October 29, 1981, the Hearing Officer issued a report recommending that objections 1 and 2 be overruled as well. On May 6, 1982, the Board issued its Supplemental Decision, adopting the Officer's findings (with a few minor exceptions) and recommendations, and certified the Union as the employees' exclusive bargaining representative.

*The Unfair Labor Practice Proceeding.*

Following certification, on May 25, 1982, the Union requested Semco to bargain collectively and furnish it with information concerning unit employees to which it was entitled as bargaining representative. The company refused, apparently for the purpose of obtaining judicial review of the Board's decision overruling its objections. On June 21, 1982, the General Counsel of the Board, pursuant to charges filed by the Union, issued a complaint against Semco for failure to bargain with the Union and to provide requested information in violation of §§ 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(5) and (1), and requested the Board to order Semco's compliance.

On December 2, 1982, the Board granted the General Counsel's motion for summary judgment against Semco on the strength of the Board's decision in the representation proceedings, stating (1) that "all issues raised by [Semco] in this proceeding were or could have been litigated in the prior representation proceedings, and [Semco] does not offer to adduce ... any newly discovered ... evidence ... which would require the Board to reexamine the decision made in the representation proceeding"; and (2) that the Board had acted properly in overruling objections 3–13 without a hearing.

The Board now seeks enforcement of its order that Semco bargain with the Union and supply it with the requested information. In response, Semco alleges that the Board's decision to overrule objections 1 and 2 after a hearing was not supported by substantial evidence; and that the Board improperly denied Semco a hearing on objections 3–13. Rather than remanding for a hearing on objections 3–13, Semco seeks to have this court deny enforcement outright, on the ground that the delay and expense caused by the Board's failure to order a hearing when first requested would make remand at this point inequitable.

II.

*The Board's decision to overrule objections 1 and 2.*

██ Since a full hearing was held on October 29, 1981, on both objections relating to the initiation fee waiver as part of the certification proceedings, the Board's decision may be reversed by this court only upon a showing that it was not supported by substantial evidence on the record considered as a whole. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). In making that determination, this court will give due regard to the Board's expertise, *id.* at 488, 71 S.Ct. at 465, *NLRB v. International Metal Specialties, Inc.,* 433 F.2d 870, 871 (2d Cir.1970), *cert. denied,* 402 U.S. 907, 91 S.Ct. 1378, 28 L.Ed.2d 647 (1971), and will not overturn findings based upon the Hearing Officer's assessment of witness credibility unless "they are 'hopelessly incredible' or they 'flatly contradict' either the 'law of nature' or 'undisputed documentary testimony.'" *NLRB v. American Geri-Care, Inc.,* 697 F.2d 56, 60 (2d Cir.1982). We conclude that the Board amply met that standard here.

██ *Objection 1.* In support of objection 1, Semco alleges that the Union, by excluding certain employees from the meetings in which the promise of a fee waiver was made, effectively excluded those employees from participation in that offer. The only evidence presented by Semco at the hearing to support that allegation was that: (1) one

part-time employee was never invited to any of the meetings in which the fee waiver was discussed; (2) another part-time employee never attended any of the meetings; (3) two fulltime employees were "almost" excluded from the meetings but did in fact attend at least one; and (4) there was no evidence the Union directly communicated its waiver offer outside those meetings.

Semco's argument that some employees were thereby excluded from participation extends at most, then, to two employees. Since there was no direct evidence that the offer was available only to those who attended the meetings, Semco's argument even as to those two depends on the inference that "as a practical matter employees who were never invited to any of the meetings would never have learned of the Union's offer ... on 'the grapevine,'" and thus exclusion from the meetings was effectively exclusion from the waiver offer. The Board declined so to infer. In view of the heroic assumptions necessary to make that inference, the Board's decision is not only supported by substantial evidence; it seems the only reasonable one to reach.

*Objection 2.* The gravamen of Semco's complaint about the proposed fee waiver is contained in objection 2: that the Union promised to waive initiation fees only for those Semco employees who joined the Union *prior* to the election. At issue are conflicting reports of public statements made by Union officers John Purcell and George Carlson, on March 24th and April 24th respectively, stipulating the terms of the proposed fee waiver. As to the March 24th meeting, Julie Deden, an employee, testified that Purcell said "that our initiation fees would be waived and that *those who came in after us* would have to pay them" (emphasis added). Purcell, although he could not recall his precise words, testified they were to the effect that "the waiver would go on until we signed a contract," so that "anybody that's ... working there now would not have to pay the initiation fee [but] somebody ... hired after the contract was signed ... would have to pay the fee."

As to the April 24 meeting, the only witness to recall Carlson's words, employee Boisvert, testified that Carlson said "that because the group was ... in the shop at the time of the organization that the fee could be waived or lowered but those who *came in after* would have to pay the full initiation fee" (emphasis added). In an affidavit filed on May 27, 1981, five months before the hearing, Boisvert gave a different account: that Carlson said the offer did not extend to those employees "hired after some point in time, after an election or contract was signed I believe ...." Boisvert's affidavit continued:

> The agent did not in any way condition the initiation fee waiver or reduction on signing an authorization card for the union or how you voted in the election. The only criterion for waiver was that you were employed in the shop during the organizational proceeding. I can't recall at what specific point in the organizational proceeding the waiver was connected to [sic] but it clearly encompassed everyone employed in the unit during the organization proceedings.

Under the rule laid down in *NLRB v. Savair Manufacturing Co.,* 414 U.S. 270, 94 S.Ct. 495, 38 L.Ed.2d 495 (1973), and its progeny, waivers of initiation fees are permitted only if they are *not* conditioned on support for the Union and apply equally to all employees whether they sign cards before the election or after. *NLRB v. Whitney Museum of American Art,* 636 F.2d 19, 21 (2d Cir.1980); *NLRB v. Dunkirk Motor Inn, Inc.,* 524 F.2d 663, 665 (2d Cir.1975). To enforce strictly that limitation, cases following *Savair* hold that waiver offers, the language of which is ambiguous concerning "critical details"—in particular the date until which the offer remains open—, violate *Savair,* notwithstanding how employees may actually construe those offers. *California State Automobile Association,* 214 NLRB 223 (1974); *Inland Shoe Manufacturing Co.,* 211 NLRB 724 (1974).

As the Hearing Officer stated, the first versions given of the Union officials' statements at both meetings ("came in after"

without more), if true, would be sufficiently ambiguous in critical details to run afoul of *Savair*. The second versions (Purcell's testimony and Boisvert's May 27th affidavit), as Semco implicitly acknowledges in attempting to discredit them, would almost certainly avoid any impermissible ambiguity under *Savair*. *See Polyflex M Company*, 258 NLRB 806 (1981); *cf. The Coleman Company, Inc.*, 212 NLRB 927 (1974).

In regard to the March 24th meeting, where both versions purported to be verbatim or near verbatim reports of Purcell's statement, the Hearing Officer expressly based his choice to credit the second over the first on determinations of the relative credibility of the two witnesses, weighing general demeanor, inconsistencies in Deden's testimony, and Deden's own admission that she understood Purcell's statement to mean that the waiver was unconditional.[1] The Board rightly deferred to those determinations, in the absence of a clear preponderance of all relevant evidence convincing it they were incorrect, *Conner Trading Co.*, 188 NLRB 263, 264 n. 4 (1971), and we affirm that decision.[2]

Semco argues in regard to the April 24th meeting that since the version of Carlson's remarks that Boisvert gave in his May 27th affidavit merely reported his interpretation of what Carlson *meant*, it is irrelevant under *Savair*, *see California State Automobile Association*, 214 NLRB 223 (1974), leaving Boisvert's uncontradicted and inculpatory testimony at the hearing as to what Carlson *said* as the only relevant evidence for the Hearing Officer to weigh.

We are unpersuaded by Semco's argument. First, contrary to Semco's assertion, it is not clear from the testimony that Boisvert intended the account given in his May 27th affidavit to be a report of what Carlson *meant* rather than what he *said;* Boisvert himself gave contradictory testimony on that point. Second, the line Semco seeks to draw between what Carlson *said* and what he *meant* seems overly nice in this context. It is one thing to insist that in applying *Savair*, courts rigorously disregard subjective interpretations of meaning in evaluating the propriety of a statement, the precise language of which is undisputed. But where, as here, the sole witness to the statement has himself put that precise language in doubt, the trier of fact is surely justified in considering all of the witness's recollections in determining what was actually said. Third, even accepting Boisvert's testimony as uncontradicted, the Hearing Officer was entitled to discredit it where, as he expressly found here, "the entire record offers reasonable grounds for such resolution. *Operative Plasterers' & Cement Masons' International Association, Local 394 (Burnham Bros., Inc.)*, 207 NLRB 147; *Aero Corporation*, 237 NLRB 455." Thus, we conclude that there is substantial evidence supporting the decision to credit Boisvert's statement in the May 27th affidavit over his testimony at the hearing.

*The Board's overruling of objections 3 to 13 without a hearing.*

Semco alleges here a number of infractions by the Union, for which it asserts that, at the very least, it was entitled to a hearing. We disagree. In order that

---

1. Semco objects that Deden's subjective understanding of Purcell's remarks is irrelevant to a determination of whether those remarks violated *Savair, see California State Automobile Association*, 214 NLRB 223 (1974), and thus was improperly relied on by the Hearing Officer. For reasons discussed *infra* in regard to Boisvert's testimony, we think Semco cuts too fine a distinction here between "what [Deden reports] was *said* by Purcell, [and] what Deden understood it to *mean*," and we are inclined to agree with the Hearing Officer's conclusion that to "summarily dismiss Deden's understandings ... as irrelevant ... would be to ignore the context in which [they were]

reached." However, since there is substantial evidence to support the Hearing Officer's determination to credit Purcell over Deden even without this testimony, we need not decide how much weight it should be given.

2. Semco argues that the Hearing Officer made his determinations of credibility with a systematic bias in favor of the Union. However, that argument is belied by the Hearing Officer's decision to disregard the testimony of employee Cornell, corroborating Union leader Purcell's account, on the basis of Cornell's demeanor.

"questions preliminary to the establishment of the bargaining relationship [may] be expeditiously resolved," *NLRB v. O.K. Van Storage, Inc.*, 297 F.2d 74, 76 (5th Cir.1961), a party is entitled to have a hearing "only if it demonstrates by *prima facie* evidence the existence of 'substantial and material factual issues' which if resolved in its favor, would require the setting aside of the representation election." *NLRB v. Lance Investigation Service, Inc.*, 680 F.2d 1, 2 (2d Cir.1982), citing to *NLRB v. Bristol Spring Manufacturing Co.*, 579 F.2d 704, 706–07 (2d Cir.1978); *cf.* Board Rules and Regulations, 29 C.F.R. § 102.69(d). Semco has failed to make such a showing for any of the objections here raised.

*Objections 4–6.* The gist of these three objections is that two employees, Denaker and Cramer, acting as agents of the Union, coerced two other employees into signing recognition cards by misrepresenting the benefits of their doing so. In support of that assertion, Semco alleged in its affidavits four separate statements, one (by Denaker) to the effect that the union would represent more vigorously those who supported it before the election; and three (two by Denaker and one by Cramer) to the effect, in various wordings, that the card would be helpful in proving that any subsequent unauthorized discharge of the employee was in retaliation for Union activities.

The Regional Director's recommendation, accepted by the Board, that all three objections be overruled without a hearing was based on findings that (1) neither Denaker nor Cramer was an agent of the Union; and (2) even if they were, the statements attributed to them did not constitute coercion or material misrepresentation.

■ On the evidence presented, the Regional Director was clearly justified in finding Denaker not to be an agent of the Union. Semco offered no direct evidence of agency, relying instead on the mere assertion that "because Denaker apparently acted in concert with Cramer, ... there is reason to believe that he, too, was acting on the Union's authorization." That bare assertion hardly makes out a *prima facie* case of agency sufficient to require a hearing. Thus we affirm the Board's decision to overrule Semco's objections to those statements on the ground that Semco failed to show agency, without reaching the question of whether the Board properly found Denaker's statements to be immaterial transgressions.

The one remark contributed to Cramer presents a slightly more difficult issue. In support of its contention that Cramer was acting as an agent of the Union, Semco offered testimony from employees that Cramer was "the one who did all the organizing for the Union," and "the one who brought the cards in ... [and] answered everybody's questions when Purcell wasn't around." That appears sufficient to make out a *prima facie* case of agency, at least on apparent authority.

■ However, even if Cramer's agency is assumed, we think the Regional Director was justified in concluding that the sole remark attributed to Cramer—that "if [Boisvert] signed a card [he] could be protected if the Company fired [him]"—was no more than an "innocent sales pitch" or mere puffery. As the Regional Director noted, the remark did not threaten physical harm, loss of employment, or lack of support from the Union in matters of general representation in the event Boisvert failed to sign the card. We concur in the Board's determination that Cramer's remark, even if true, would not constitute grounds for setting aside the election, and affirm its decision to overrule objections 4–6 without a hearing.

*Objections 8–11.* Semco here alleges that the Union misrepresented to employees the potential benefits of unionization by suggesting that another company had lowered wages to recoup legal costs after the Union lost its campaign, and that Semco might do the same; and by misrepresenting that Semco's parent company was already unionized at other locations at which the Union had been able to secure favorable contracts.

At the time the Director reviewed these objections in 1981, the Board was following

the rule in *Hollywood Ceramics,* 140 NLRB 221 (1962), that factual misrepresentations are "substantial and material" where they involve (1) a substantial departure from the truth related to a matter of importance to the employees; (2) that could not be evaluated effectively by the employees; (3) that was made at a time when the other party could not make an effective reply; and (4) that comes from a party in a position to know the true facts. Under *Hollywood Ceramics,* the Director found the allegations behind objections 8–11, even if true, not to constitute material misrepresentations warranting setting aside the election.

Last year, however, subsequent to the Director's findings in this case, the Board in *Midland National Life Insurance Co.,* 263 NLRB No. 24, 110 LRRM 1489 (1982), reinstated the more stringent test for material misrepresentations first announced in *Shopping Kart Food Market, Inc.,* 228 NLRB 1311 (1977), but subsequently overruled in *General Knit of California, Inc.,* 239 NLRB 619 (1978). Under *Midland,* misleading campaign statements are no longer grounds for setting aside an election, unless a party "has used forged documents which render the voters unable to recognize propaganda for what it is" or "an official Board document has been altered in such a way as to indicate an endorsement by the Board of a party to the election." *Midland,* 263 NLRB No. 24 at n. 25, 111 LRRM at 1494 and n. 25. The Board in *Midland* expressly stated it was reapplying the old *Shopping Kart* rule "to all pending cases in whatever stage." *Id.* at n. 24.

■ We think objections 8–11 should be overruled as immaterial under either *Midland* or *Hollywood Ceramics.* The statements Semco attributes to the Union in support of these objections are all fairly trivial, some of them were not even shown to be false, and as such they do not merit a hearing even under the more lenient *Hollywood Ceramics* test. However, since the standard is sure to be questioned in other cases, we affirm the Board's decision under the *Midland* rule. Congress has entrusted a wide degree of discretion to the Board to establish the procedures necessary to ensure fair and free elections. *NLRB v. A.J. Tower Co.,* 329 U.S. 324, 330, 67 S.Ct. 324, 327, 91 L.Ed. 322 (1946). In deciding to return to the old *Shopping Kart* rule, the Board in *Midland* noted that the *Hollywood Ceramics* rule had promoted vexatious litigation and delayed unnecessarily the resolution of certification elections, while disregarding the fact that employees are "mature individuals who are capable of recognizing campaign propaganda for what it is and discounting it." 263 NLRB No. 24, 110 LRRM at 1493. There was thus a "reasonable basis in law" for the Board's return to the *Shopping Kart* analysis, and we defer to that decision. *See NLRB v. Hendricks County Rural Electric Corp.,* 454 U.S. 170, 176, 102 S.Ct. 216, 221, 70 L.Ed.2d 323 (1981).

Semco does not directly contest the Board's adoption of the *Midland* rule. Instead, it argues that this court should limit retroactive application of *Midland* to cases still in representation proceedings, thereby leaving this case under the old *Hollywood Ceramics* rule. We decline to do so. The broad language of the Board's decision in *Midland* ("all pending cases in *whatever* stage" [emphasis added]) makes clear that the Board intended no such limitation. While we are of course not bound by the Board's views on retroactive application, we should defer to them absent some manifest injustice. *Bradley v. School Board of Richmond,* 416 U.S. 696, 711, 712–17, 94 S.Ct. 2006, 2016–19, 40 L.Ed.2d 476 (1974). No such injustice exists here. As the Eighth Circuit recently noted in *NLRB v. Monark Boat Co.,* 713 F.2d 355, 361 (1983): "[t]he parties were harmed, if at all, only to the extent that their belief that *Hollywood Ceramics* would still be applied caused them to be more scrupulously honest during the election campaign." [3]

---

**3.** None of the several circuits that have already applied *Midland* retroactively has distinguished between representation and enforcement proceedings. *See, e.g., NLRB v. Monark Boat Co.,* 713 F.2d 355 (8th Cir.1983) (retroactive application in enforcement proceedings); *NLRB v. Milwaukee Brush Mfg. Co.,* 705 F.2d 257 (7th Cir.1983) (same); *NLRB v. Rollingon Corp.,*

■ *Objections 3, 7, 11 and 12.* Semco did not rebrief the remaining four objections for this petition, although in a footnote it referred us to supporting arguments presented in the original representation proceedings. While that reference is sufficient to preserve the issues on appeal,[4] we infer that Semco does not place much reliance on them in seeking denial of the enforcement order. For the sake of completeness, however, we note that a review of the record and original briefs satisfies us that the Board acted properly in denying all four objections without a hearing.[5]

As we find that the NLRB properly overruled all thirteen objections raised by Semco, we grant enforcement of the Board's order that Semco bargain with Graphic Arts International Union, Local 10–B, as

702 F.2d 589 (5th Cir.1983) (same). The sole exception cited by Semco, *Mosey Manufacturing Co., Inc. v. NLRB,* 701 F.2d 610 (7th Cir. 1983) (en banc), is not to the contrary. The election in that case had been won by one vote, the employer's challenges to certification had already dragged on for five years, through three changes in the applicable standard of review, and both sides had briefed the case on appeal only under *Hollywood Ceramics.* Only upon concluding that the case was "so unusual ... that we cannot be sure it was in the Board's contemplation when the Board announced ... that the new rule would apply to all pending cases" did the Seventh Circuit decline to apply the *Midland* rule retroactively. *Id.* at 612.

4. The NLRB, in support of its argument that Semco waived all four objections in this petition, cites to *NLRB v. Browning-Ferris Industries,* 691 F.2d 1117, 1125 (3rd Cir.1982); *Jack Thompson Oldsmobile, Inc. v. NLRB,* 684 F.2d 458, 463 (7th Cir.1982); *NLRB v. Nevis Industries, Inc.,* 647 F.2d 905, 908 (9th Cir.1981); *Riverside Press, Inc. v. NLRB,* 415 F.2d 281, 284–85 (5th Cir.1969), *cert. denied,* 397 U.S. 912, 90 S.Ct. 915, 25 L.Ed.2d 94. However, those cases involve a complete default by a party, and thus are inapposite to this case. Moreover, that an enforcement order originates with this court, not the Board, may justify some minimal review of the Board's determination in light of the record even in cases of complete default. *See NLRB v. Filtron Co.,* 309 F.2d 184, 185 (2d Cir.1962).

5. The conduct alleged in objection 3—that the Union represented to employees that signing an authorization card was just to get an opportunity to vote—is unobjectionable unless (1) "the totality of circumstances surrounding the card solicitation is such as to add up to an assurance to the card signer that his card will be used for no purpose other than to help get an election," *Levi Strauss & Co.,* 172 NLRB 732, 733 n. 7; *and* (2) the card is in fact subsequently used to authorize the Union to represent the signer for collective bargaining. *Id.* at 733. Inasmuch as the latter condition was indisputably not met here, the Director properly recommended overruling the objection without even considering the former.

Objection 7, which alleges that a Union official misrepresented wages and benefits it claimed to have negotiated at other shops, including those of the employer, was likewise properly dismissed. In its brief for the original representation proceedings, the only exception Semco took to the Board's decision on this objection concerned the implicit misrepresentation that Semco was unionized in other units. That alleged infraction is subsumed under objection 11, already disposed of above.

Objection 12 alleges that the Union coerced Semco employees by trespassing on Semco's premises two days before filing the petition for an election, and by taking pictures of employees while soliciting authorization cards from them. The Director properly concluded that such pre-petition conduct could not serve as a basis for setting aside the election, under the rule in *Ideal Electric and Manufacturing Co.,* 134 NLRB 1275 (1961), that the "critical period" commences only with the filing of the petition. While departures from that rule have been sanctioned in a number of cases, they were confined to instances of clearly proscribed conduct likely to have had a significant impact on voting post-petition. *See, e.g., Lyons Restaurants,* 234 NLRB 178 (1978) (pre-petition warnings to employees that if they did not join the Union they would not work); *Gibson's Discount Center,* 214 NLRB 221 (1974) (pre-petition offers to waive initiation fees in contravention of standards laid down in *NLRB v. Savair Manufacturing Co.,* 414 U.S. 270, 94 S.Ct. 495, 38 L.Ed.2d 495 (1973)). No such prejudicial conduct can even be inferred on the facts alleged here.

Objection 13, alleging that the Union promised employees it would waive provisions in its constitution and bylaws restricting the ratio of apprentices to journeymen in the shop, was likewise without merit. As the Director noted in recommending it be overruled, the Union offer was made available to all employees regardless of their support pre-election, and as such was unobjectionable under *Savair Manufacturing Co., supra,* as " 'nothing more than a removal by the union of a self-imposed barrier, which makes membership itself more attractive,' " citing to *Whitney Museum of American Art,* 247 NLRB No. 61, *enf'd,* 636 F.2d 19 (2d Cir.1980).

representative for its Albany facility, and provide pertinent information concerning unit employees at the Union's request.