739 F.2d 214
 116 L.R.R.M. (BNA) 3119, 101 Lab.Cas. P 11,120
 HICKMAN HARBOR SERVICE, a DIVISION OF FLOWERS TRANSPORTATION
COMPANY, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
National Maritime Union of America, AFL-CIO, Intervenor.
 Nos. 83-5161, 83-5327.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 10, 1984.
Decided July 16, 1984.
 
 Thomas O. McCarthy (argued), McMahon, Berger, Breckenridge, Hanna, Linihan & Cody, St. Louis, Mo., for petitioner.
 Elliott Moore, Deputy Associate Gen. Counsel, Lawrence E. Blatnik (argued) N.L.R.B., Washington, D.C., for N.L.R.B.
 Sidney H. Kalban (Lead) (argued), Phillips & Cappiello, Ned R. Phillips, New York City, for National Maritime Union of America.
 Before ENGEL and MARTIN, Circuit Judges, and WEICK, Senior Circuit Judge.
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 Hickman Harbor Service, a Division of Flowers Transportation Company, seeks review of, and the National Labor Relations Board cross-applies for enforcement of, the Board's March 10, 1983 order, Hickman Harbor Service v. National Maritime Union, 266 N.L.R.B. 71 (1983), finding that Hickman had violated section 8(a)(5) and (1) of the National Labor Relations Act by refusing to bargain with the National Maritime Union of America, AFL-CIO, as the duly certified representative of Hickman's employees. The union has been granted permission to intervene.
 
 
 2
 On August 19, 1981, the union filed a petition with the Board seeking certification as the bargaining representative of the company's employees. After a hearing, the parties agreed that the appropriate unit for election would be:
 
 
 3
 All deckhands, mates, welders, welders' helpers and mechanics employed by [the company] at its Hickman, Kentucky operations, excluding all master/pilots, all office clerical employees, and all professional employees, guards and supervisors as defined in the Act.
 
 
 4
 The election was held on October 16, 1981. The union received fourteen votes while thirteen votes were cast against representation by the union.
 
 
 5
 On October 22, the company filed timely objections to the election claiming that the union had made material misrepresentations regarding wage rates it had negotiated with another company and created an atmosphere of fear and confusion which prevented employees from exercising their free choice in a noncoercive atmosphere. After several requests for a hearing and orders by the Board, a hearing was finally held on February 23, 1982 to consider the company's objections. On April 2, the administrative law judge issued a report in which he made the following findings.
 
 
 6
 First, regarding the company's claim of material misrepresentations by a union representative, the administrative law judge found that a union campaign meeting was held approximately one week prior to the election. At that meeting, the union's representative, George Matz, sought to explain to those employees in attendance a wage agreement the union had negotiated with the Material Service Corporation, a company engaged in the same services as Hickman. According to the testimony of employees Donald Riley, Thomas Killibrew and Edward Reason, company witnesses at the hearing, Matz produced a copy of the union's Material Service contract and stated that deckhands at Material Service earned "$466.00 a week." The employees then testified that Matz used a calculator to multiply the figure by 52 to determine the yearly earnings of deckhands at Material Service. According to the employees' testimony, Matz stated that deckhands at Material Service earned in excess of $24,000 a year. Wayne Busby, an employee also in attendance at this meeting, corroborated this testimony, but added that Riley "pulled out a pencil and piece of paper" and independently determined that deckhands at Material Service earned in excess of $24,000.[1]
 
 
 7
 It was also found from the testimony of Matz and employees Joe Busby and Terry Saunders, who testified for the union, that those at the meeting "were given sufficient facts on which to accurately determine for themselves what [deckhands] earned on an annual basis." However, it was noted that Matz, "at some point," did carelessly refer to the figure of $466.68 when describing the weekly salaries of deckhands at Material Service. On the other hand, the testimony of the company's witnesses was discredited totally even though it was undisputed. As a result, the administrative law judge found that Matz had not made any material misrepresentations concerning wages in the union's Material Service contract even though they really were paid $150 a week less than he stated.
 
 
 8
 The company also claimed that an atmosphere of fear and intimidation tainted the representation election. This claim was rejected by the administrative law judge. Although the company had argued that union agent Matz had encouraged employees to engage in picketline violence, the administrative law judge found that most of the testimony of the company's witnesses was uncorroborated and contradictory. At the same time, however, he found Matz's testimony denying the charges to be "straightforward and convincing."
 
 
 9
 The administrative law judge also rejected the company's other contention that several incidents which occurred prior to the election date created an atmosphere of fear of reprisal among the employees. These included threats by union adherents to beat up union opponents, a threat to damage the van of a union opponent, the placing of anonymous phone calls on election-eve, and the vandalization of an automobile owned by, and physical assault of, an employee vocally opposed to the union. Although the administrative law judge found that all these events occurred prior to the election, he nonetheless concluded that they "did not create an atmosphere of fear of reprisal [to warrant] setting aside an election."
 
 
 10
 Here, the company argues that the Board's decision affirming the administrative law judge's factual and legal conclusions is not based on substantial evidence. They argue the administrative law judge repeatedly ignored undisputed testimony evidencing misconduct by union supporters, and improperly credited the testimony of witnesses even though there was no support in the record for their testimony. The company also maintains that the Board's retroactive application of its decision in Midland National Life Insurance Co., 263 N.L.R.B. 24 (1982), was improper because there was sufficient fraud in the union's representations to prevent a fair election.
 
 
 11
 Initially, the company asserts error in the Board's discounting the effect of the misrepresentations by union agent George Matz regarding wage rates the union had negotiated with the Material Service Corporation. The Board, relying on the findings of the administrative law judge, found that no material misrepresentations were made by the union and the company had sufficient time to respond to any union inaccuracies. While the administrative law judge evaluated the objections under the rule set out in General Knit of California, 239 N.L.R.B. 619 (1978), and Hollywood Ceramics Company, 140 N.L.R.B. 221 (1962), the Board chose to utilize its recent decision in Midland Life Insurance Company, 263 N.L.R.B. 24, 110 L.R.R.M. 1489 (1982), in reviewing the objections. In Midland Life, the Board held that it would no longer probe into the truth or falsity of campaign declarations, nor would it set aside an election on the basis of misleading campaign statements. This was a departure from the General Knit/Hollywood Ceramics rule, where the Board previously found campaign statements which involved "a substantial departure from the truth," which prevented an effective reply, and which could reasonably be expected to have a significant impact on an election, required the setting aside of an election. Hollywood Ceramics, 140 N.L.R.B. at 224. Now, the Board will intervene only "where a party has used forged documents which render the voters unable to recognize propaganda for what it is," or "when an official Board document has been altered in such a way as to indicate an endorsement by the Board of a party to the election." Midland Life, 110 L.R.R.M. at 1494 and n. 25. The Board expressly noted it was applying its Midland Life rule "to all pending cases in whatever stage." Id. at n. 24, quoting Deluxe Metal Furniture Co., 121 N.L.R.B. 995, 1007 (1958).
 
 
 12
 Although Midland Life was decided subsequent to the certification of the union here, we find no error in the Board's retroactive application of the rule to this case. See National Posters, Inc. v. NLRB, 720 F.2d 1358, 1363 (4th Cir.1983). Concededly, Matz's statements were not completely accurate. Nor were the administrative law judge's findings in this area entirely supportable. Nonetheless, we uphold the Board's retroactive application of its Midland Life standard because the misrepresentation involved here was not "so pervasive and the deception so artful" that the employees exposed to it were unable to separate fact from fiction. Van Dorn v. NLRB, 736 F.2d 343, 348 (6th Cir.1984). Although the record is far from being clear on this point, it contains enough evidence to indicate that Matz's statements at the union meeting concerning the salary of deckhands at Material Service were not so deceptive that they affected the employees' right to free and fair choice in the collective bargaining context.
 
 
 13
 Furthermore, because we believe the Board's retroactive application of Midland Life "will best effectuate the policies underlying the agency's governing act," we see no error in applying the rule of Midland Life here. National Posters, Inc. v. NLRB, 720 F.2d at 1363. As we noted in Van Dorn, at 347, when reviewing a decision by the Board to narrow the instances in which an election will be set aside on the ground of campaign misrepresentations, we are limited to determining whether there has been an abuse of discretion. "The test for determining whether the Board has abused its discretion is whether its orders have a 'reasonable basis in law.' " Van Dorn at 347, quoting NLRB v. Hendricks County Rural Electric Corp., 454 U.S. 170, 176, 102 S.Ct. 216, 221, 70 L.Ed.2d 323 (1981). The Board argues, and we agree, that the rule of Midland Life lessens the incentive for protracted litigation which tends to follow union campaign elections. Further, the rule recognizes the ability of employees to evaluate campaign propaganda in a realistic manner. Therefore, we find that the Board has not abused its discretion in retroactively applying its Midland Life decision. See NLRB v. Michigan Rubber Products, Inc., 738 F.2d 111, 116, (6th Cir.1984); NLRB v. Semco Printing Center, Inc., 721 F.2d 886, 892 (2d Cir.1983); National Posters, Inc. v. NLRB, 720 F.2d 1358, 1364 (4th Cir.1983); NLRB v. New Columbus Nursing Home, Inc., 720 F.2d 726, 728-29 (1st Cir.1983) (rule of Midland Life applied "only with respect to the situation arising in the instant case") Certainteed Corp. v. NLRB, 714 F.2d 1042, 1056 (11th Cir.1983) (case remanded to the Board to determine whether Midland Life should be applied retroactively); NLRB v. Monark Boat Co., 713 F.2d 355, 361 (8th Cir.1983); NLRB v. Yellow Transportation Co., 709 F.2d 1342 (9th Cir.1983) (per curiam ); N.L.R.B. v. Milwaukee Brush Mfg. Co., 705 F.2d 257 (7th Cir.1983) (per curiam ); NLRB v. Rolligon Corp., 702 F.2d 589 (5th Cir.1983). Congress has granted the Board a wide degree of discretion in establishing rules and procedures to guarantee the implementation of fair and free elections. NLRB v. A.J. Tower Co., 329 U.S. 324, 330, 67 S.Ct. 324, 327, 91 L.Ed. 322 (1946). Unless manifest injustice can be shown, the Board's judgments on retroactivity should be upheld. NLRB v. Food Store Employees Union, Local 347, 417 U.S. 1, 10 n. 10, 94 S.Ct. 2074, 2080 n. 10, 40 L.Ed.2d 612 (1974); Bradley v. School Bd. of Richmond, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974); NLRB v. Semco Printing Ctr., 721 F.2d at 892. We find no injustice exists here.
 
 
 14
 In its second argument, the company asserts the Board erred in refusing to set aside the election because of threats to and intimidation of employees opposed to the union. When reviewing such claims, we must apply a substantial evidence test in evaluating the findings of the Board. Universal Camera Corp. v. NLRB, 340 U.S. 474, 491, 71 S.Ct. 456, 466, 95 L.Ed. 456 (1951); Union Carbide Corp. v. NLRB, 714 F.2d 657, 660 (6th Cir.1983). To set aside a representation election it must be proven the election was conducted improperly. NLRB v. McDonalds Industrial Products, 731 F.2d 340, 342 (6th Cir.1984). Moreover, it must be shown "not only that unlawful acts occurred, but also that they interfered with the employees' exercise of free choice to such an extent that they materially affected the results of the election." NLRB v. Bostik Division, USM Corp., 517 F.2d 971, 975 (6th Cir.1975), quoting NLRB v. Golden Age Beverage Co., 415 F.2d 26, 30 (5th Cir.1969). If the Board's factual findings in this area are "reasonable in light of the proven facts," they must be upheld. NLRB v. Paschall Truck Lines, Inc., 469 F.2d 74, 76 (6th Cir.1972); see also Local Union No. 948, IBEW, et al. v. NLRB, 697 F.2d 113, 117 (6th Cir.1982); NLRB v. Comgeneral Corp., 684 F.2d 367, 369 (6th Cir.1982). However, we will not give a factual finding "more weight than in reason and in the light of judicial experience [it] deserve[s]." Universal Camera Corp., 340 U.S. at 496, 71 S.Ct. at 469. If the record reveals that the administrative law judge has ignored uncontradicted testimony or otherwise abused his discretion in resolving factual issues, this court must not acquiesce in the decision. Indeed, the "substantial evidence" doctrine requires that we consider the entire record, including those portions which fairly undermine the administrative law judge's ultimate conclusions. Universal Camera Corp., 340 U.S. at 487-88, 71 S.Ct. at 463-64; Local Union No. 948, 697 F.2d at 118. Although we are not permitted to substitute our judgment for that of the administrative law judge when credibility findings are involved, NLRB v. Flex Plastics, Inc., 726 F.2d 272, 276 (6th Cir.1984), no such deference is mandated where a administrative law judge's factual findings are unreasonable in light of the evidence and testimony presented below. See Local Union No. 98 v. NLRB, 697 F.2d at 119-21 (Jones, J., concurring).
 
 
 15
 Applying this concept here, we agree with the company that the Board erred in refusing to set aside the election because of the breakdown in "laboratory conditions" during the course of the election campaign. We are convinced that the factual findings in this area are not supported by substantial evidence. For example, Edward Reason testified that prior to the election, he overheard a conversation between Joe Busby and Thomas Shields, both supporters of the union, where Shields stated that employee Wayne Busby "needed a good whupping [sic] to get his thinking straight," presumably because of his opposition to the union. Reason's testimony was undisputed. However, the administrative law judge completely ignored this testimony when assessing whether an atmosphere of fear existed during the election campaign. Further, Wayne Busby testified without contradiction, that when he attempted to intercede in an argument between his brother, Joe Busby, and another company employee in a liquor store, Thomas Shields "jumped" him from behind and began to kick and beat him up. This incident occurred shortly after a union meeting held earlier in the evening. Incredibly, the administrative law judge found that there was insufficient evidence linking this incident with the conflicting union sentiments of Wayne Busby and Shields. We disagree. If Shields' threat against Busby, standing by itself, was sufficient to disrupt the necessary "laboratory conditions" for a fair election, see NLRB v. Mr. Porto, Inc., 590 F.2d 637, 639 (6th Cir.1978); NLRB v. Georgetown Dress Corp., 537 F.2d 1239, 1242 (4th Cir.1976), then his subsequent physical assault of Busby obviously expanded the tensions already created by his earlier comments and further upset the climate required for a fair election. We believe the administrative law judge's findings to the contrary are not supported by evidence in the record.
 
 
 16
 There was also presented considerable testimony which indicated that union agent Matz and other employees supportive of the union suggested various forms of retaliation against those employees who were opposed to the union. Edward Reason and Wayne Busby both testified that they were present when union adherents proposed vandalizing the automobiles of employees unwilling to support the union's goals. Busby further testified that after he informed his co-workers of his opposition to the union, he found his jeep vandalized in the company's parking lot. While crediting much of this testimony, the administrative law judge found "no evidence [to show] that the damage to Busby's jeep was caused by the union or was caused by any employee in an attempt to persuade Wayne Busby to support the union," and therefore, did not create a coercive atmosphere. Again, we disagree. Although there was no direct evidence linking the union or its sympathizers with the damage to Busby's jeep, there was more than enough circumstantial evidence surrounding this incident and others like it to compel a finding that a general atmosphere of fear and coercion existed which prevented a fair and free election.
 
 
 17
 The threats involved here were not idle or vague. On the contrary, they were calculating and announced with the specific purpose to intimidate those employees opposed to the union. Moreover, unlike many situations in the labor context, the threats were frequently carried out in a manner designed to show that the union was serious about its goals. Common sense teaches that this type of violence and coercion does influence individuals in a subtle, yet highly effective way. Just because the threats and violence were directed at only a few, or even a single employee, does not dissipate the coercive nature of the conduct. Indeed, because the misconduct was highly selective and involved a very small unit, its coercive nature may have been intensified without much effort on the part of those instigating its occurrence. Combining this knowledge with the closeness of the vote in this case, we are not in a position to say that the misconduct involved here was "so remote as to have had no effect on the election." NLRB v. Mr. Porto, Inc., 590 F.2d at 639. Rather, we believe that there existed an atmosphere of coercion and tension which prevented the holding of a fair and free election.
 
 
 18
 It is no answer to argue that there was no direct evidence of union complicity with the misconduct documented here. As has the Fourth Circuit, we do not find the question of union responsibility and participation to be the ultimate determinative in situations where an atmosphere of fear and coercion are manifest:
 
 
 19
 If the conduct, though that of a mere Union adherent and not that of a Union agent or employee, is sufficiently substantial in nature to create a general environment of fear and reprisal such as to render a free choice of representation impossible, then it will require the voiding of the election.
 
 
 20
 Methodist Home v. NLRB, 596 F.2d 1173, 1183 (4th Cir.1979); see also Zeiglers Refuse Collectors, Inc. v. NLRB, 639 F.2d 1000, 1006 (3d Cir.1981); Home Town Foods v. NLRB, 379 F.2d 241, 244 (5th Cir.1967), decision on remand, 172 N.L.R.B. 126 (1968), enforcement denied, 416 F.2d 392 (5th Cir.1969). Though we recognized that the "laboratory climate" surrounding representative elections will not always be optimum, and every election slightly tainted by misconduct cannot always be set aside, nevertheless, where the record reveals an environment markedly tainted with coercive behavior, a new election must be held. NLRB v. Skelly Oil Co., 473 F.2d 1079, 1085 (8th Cir.1973). "The Board has an obligation to insure that an election is held 'under such conditions as will be conducive to the sort of free and untrammeled choice of representatives contemplated by the Act.' " Zeiglers Refuse Collectors, 639 F.2d at 1004, quoting Methodist Home v. NLRB, 596 F.2d at 1183. This was not done here, and therefore the election must be set aside.
 
 
 21
 Accordingly, the petition for enforcement is denied, the election is ordered set aside, and the case is remanded to the NLRB for further proceedings consistent with this opinion.
 
 
 
 [1]
 It should be noted here that weekly salaries for deckhands at both Material Service and Hickman are calculated on the following basis: Deckhands work a three-week rotation. Seven consecutive days on a daytime schedule, then seven days on a nighttime schedule, then seven days off. Under the Material Service contract in question here, deckhands actually earned only $311.24 per week and $16,178.45 annually, a significant difference from the $466 per week and $24,000 per year figures Matz was quoted as saying